## POAG v. CHARLOTTE OIL & FERTILIZER CO.

FRAUD—DECEIT—DAMAGES—CONTRACT—PRESUMPTIONS.—The law will not imply fraud or deceit from delivery to purchaser of unsound food for a sound price, but to enable purchaser to recover damages arising from such deception and fraud, he must show that seller knew the goods to be unsound at time of delivery.

Before KLUGH, J., York, November, 1900. Reversed.

Action on account and for damages by J. Edgar Poag against Charlotte Oil and Fertilizer Co. From judgment for plaintiff, defendant appeals.

*Messrs. Thos. F. McDow, Witherspoon & Spencers,* for appellant. Mr. C. E. Spencer cites: 59 A. D., 401; 2 McC.,

214; 35 A. D., 343; 1 Allen, 208; 6 Metc., 527; 2 Metc., 374; 2 East., 446; 25 A. D., 214.

*Messrs. Finley & Brice, Wilson & Wilson,* contra.    Mr. J. S. Brice cites: 2 N. & McC., 538; 27 S. C., 376; 17 L. R. A., 545; 12 S. C., 590; 37 L. R. A., 799; 6 L. R. A., 149; 5 Ency., 320, 321; 11 L. R. A., 681.

July 18, 1901.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    The complaint contains two causes of action, in the first of which the plaintiff alleges the defendant to be indebted, under contract, to the plaintiff the balance of $34, for a rebate on 200 tons of cotton seed hulls at 25 cents per ton, and for 400 empty sacks shipped by plaintiff to defendant at $2 per hundred; and on the second of which, the defendant, by reason of unsound cotton seed hulls shipped by it to plaintiff, damaged the plaintiff $200. Judgment for $234 was demanded by plaintiff. The answer of defendant denied any indebtedness to plaintiff, and further alleged: that if any of the cotton seed hulls which were shipped by the defendant to the plaintiff were unfit to be fed to plaintiff's stock, the plaintiff had knowledge of such unsoundness before he fed them to his stock, and defendant was wholly unaware of any such unsoundness; that if such cotton seed hulls were unfit to be fed to stock, it was without fault on defendant's part and despite its utmost care to prevent the existence of any fault in the condition of said cotton seed hulls.

The issues joined came on for trial before his Honor, Judge Klugh, and a jury; verdict was for $190 in favor of plaintiff. After entry of judgment the defendant appealed therefrom on the single ground of an error in the Judge's charge to the jury, to wit: "For error—after properly instructing the jury that the right of plaintiff to recover for damages resulting from the use of unsound food, purchased of defendant, must be bottomed upon fraud or deceit prac-

ticed by defendant upon the plaintiff—in charging that if a
sound price was paid and received, the law, raising a war-
ranty of soundness, would imply fraud or deceit from the
fact of unsoundness; and that whether the defendant actually
knew of the unsoundness or not, being bound to know, he
would be responsible for any damages following." We will
now consider this ground of appeal.

The complaint does not allege a knowledge by the defend-
ant of the unsoundness of the cotton seed hulls sold to the
plaintiff. It is admitted by the appellant that under the laws
of this State a sound price is a warranty of a sound com-
modity; but it is not admitted that the laws of this State will
"imply, in such a case, fraud or deceit in the seller from the
fact of unsoundness;" and that "whether the defendant knew
of the unsoundness or not, being bound to know, he would
be responsible for any damages following." The exact lan-
guage used by the Circuit Judge is: "If the plaintiff agreed
with the defendant to buy sound property, then he had the
right to have the defendant to know whether or not he was
selling and delivering sound property, *and the defendant,
whether he actually knew it or not, delivered unsound prop-
erty for a sound price, the law would imply deception, and
would hold the defendant responsible for any damage occur-
ring from the deceit.*" To hold any one responsible for
*deception* or *deceit,* without any knowledge thereof by the
party to be affected thereby, is a bold and startling doctrine.
We prefer to adopt the rule of law on that subject from the
14th vol. of the A. & E. Enc. of Law, at pages 86, 87 and
88: "As was stated in a preceding paragraph, a fraudulent
intent in the case of a false representation includes knowl-
edge that the representation is false, or what is called a
*scienter* * * * As a general rule, an action of deceit cannot
be maintained if a false representation is made in the honest
belief that it is true. In the requirement of a *scienter,* deceit
differs from a breach of warranty. If a representation
amounts to a warranty, an action of assumpsit for a breach
of warranty, or an action on the case for a false warranty,

express or implied, may be maintained, whether the defendant knew the representation was false or not. Therefore, when it is decided in any case that the knowledge of the falsity of a representation is necessary to entitle a person to maintain an action for damages, care should be taken to ascertain whether the action is for deceit or for breach of warranty or false warranty, before the decision is relied upon as authority." See, also, pages 223 and 224 of 1 Strob., in the case of *Chisholm* v. *Gadsden.* We cannot avoid the conclusion that the jury may have been misled in their reliance upon the charge of the trial Judge by his language complained of by the defendant. A new trial must be ordered.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the action remanded to the latter Court for a new trial.