14119

COOPER & GRIFFIN, INC., v. BRIDWELL

(181 S. E., 56)

220

*Mr. W. E. Bowen,* for appellant,

*Messrs. Blythe & Bonham,* for respondent,

August 6, 1935.

The opinion of the Court was delivered by MR. G. B. GREENE, ACTING ASSOCIATE JUSTICE.

This action arose out of a transaction between plaintiff-respondent and defendant-appellant, in the course of which they executed these two written instruments:

"Purchase Note

"Cooper & Griffin, Inc.

"Greenville, S. C.

"Mr. G. W. Bridwell,

"Travelers Rest, S. C.

"We beg To Confirm The Following Purchase From you No. 79

"Date November 1, 1930.

"Quantity Twenty four (24) bales of cotton.

"Quality Equal samples submitted, average seven (7) points on Middling.

"Price One hundred fifty three (153) Points off July New York. On call to June 25, 1931.

"Terms FOB Greenville, S. C.

"Shipment Prompt.

"Reimbursement We to advance eight (8c) Cents per pound. No Charge for interest or storage.

"Cooper & Griffin, Inc.

"By W. S. Griffin, Pres. & Mgr.

"Remarks

"Accepted

"Date

"G. W. Bridwell"

"Cooper & Griffin
"Incorporated
"Cotton Merchants
"Head Office
"Greenville, S. C.

"June 24, 1931.

"Mr. G. W. Bridwell,

"Travelers Rest, S. C.

"Dear Sir:

"We beg to confirm having transferred the call on our purchase contract contract No. 79 dated November 1, 1930 for twenty four (24) bales of cotton at one hundred fifty three (153) Points off July to October with October selling

forty points over July plus six (6) points commission, thereby making the basis on this contract,

" 'One hundred ninety nine (199) Points off October New York. On call to September 25, 1931.'

"Your acceptance of this letter which is written in duplicate will confirm the above.

"Yours very truly,

"Cooper & Griffin, Inc.

"By G. Burnette.

"Accepted: G. W. Bridwell."

The complaint alleged the execution of said two instruments, copies of which were attached thereto and made a part thereof as Exhibits "A" and "B," respectively. It also alleged the delivery of twenty-four bales of cotton by defendant to plaintiff, and an advance by plaintiff to defendant of 8 cents per pound thereon. Paragraph 5 of the complaint contained the following allegations: "That defendant has failed and refused, after demand made upon him, to comply with the terms of his said contract, and there is now due and owing to plaintiff on account of the breach thereof the sum of Four Hundred forty-three and 90/100 ($443.-90) Dollars, with interest thereon at the rate of seven per cent. per annum from September 25, 1931, as shown by the itemized statement of account hereto attached as part of this complaint and marked Exhibit 'C.' "

Plaintiff demanded judgment against defendant in the sum of $443.90, with interest.

The answer denied all allegations of the complaint except such as were admitted in Paragraph 2 thereof. Inasmuch as our decision in this case rests mainly upon the disposition that we make of the questions that have been raised in respect to the matters alleged in Paragraphs 2 and 3 of the answer, we quote them in full.

"II. That on or about November 1, 1930, the defendant was approached by the duly authorized agent of the plaintiff, a Mr. Vernon, relative to the placing of certain cotton

on the market, stating to defendant that the plaintiff would advance to him nine (9c) cents per pound on all cotton placed by the defendant with the plaintiff on the market, this defendant not being familiar with the technical terms used in the cotton market, the defendant at that price would be required to keep up and be responsible for any margins; that on or about said date the defendant, in company with the said Mr. Vernon, came from Travelers Rest to Greenville and talked with Mr. W. S. Griffin of the firm of Cooper & Griffin; that in that conversation it was agreed that the plaintiff would advance to the defendant eight (8c) cents per pound on said cotton instead of nine (9c) cents, and the plaintiff, in consideration of the difference in price, would not require the defendant to put up or be responsible for any margins on said cotton or be responsible to plaintiff for any decline in price below the said eight (8c) cents per pound or any difference between the said eight (8c) cents per pound and the price at which same might be finally sold; that said conversation was supposed to be reduced to writing in the contract or agreement, a copy of which is set forth in plaintiff's complaint and marked Exhibit "A"; that in consequence of said agreement the defendant delivered to the plaintiff twenty-four (24) bales of cotton and received therefor the sum of eight (8c) cents per pound instead of nine (9c) cents per pound; the defendant admits the execution of the letter or agreement, copy of which is set forth in plaintiff's complaint as Exhibit "B," said letter or agreement, however, being executed for the accommodation of the defendant and was without consideration."

"III. This defendant alleges that he is uneducated, unlettered and has had very little or no experience in dealing with the cotton mart, and the technical terms in connection therewith are entirely foreign to him, and he relied entirely upon the statements of the plaintiff, through its agents, Messrs. Griffin and Vernon, as to the contents of said contract, they informing him that said contract contained the agreement as hereinabove alleged, and if any of

the technical terms of said contract should be held to convey the meaning, or be subject to the interpretation that the defendant should be liable for any margins or decline of prices below eight (8c) cents per pound and the price for which said cotton finally sold, then the signing of said contract, with such meaning or interpretations, was induced by the fraudulent acts of the plaintiff, through its agents, in misinforming him as to the technical terms thereof, they having informed him that in accepting eight (8c) cents per pound instead of nine (9c) cents per pound, he would not be liable for any margins or decline of price below eight (8c) cents per pound, or for the difference resulting from the final sale thereof; this defendant, however, is informed and believes and alleges that said contract does not contain any provision making him liable for same."

Upon due notice plaintiff, at the call of the case for trial, moved before Honorable William H. Grimball, presiding Judge, for an order striking out all of Paragraph 3 of the answer, and all of Paragraph 2 thereof except the words: "The contract or agreement, a copy of which is set forth in the plaintiff's complaint and marked Exhibit 'A'" in lines 7, 8, and 9 of page 2; and also the words "the defendant delivered to the plaintiff twenty-four (24) bales of cotton and received therefor the sum of eight (8c) cents per pound," set forth in lines 10, 11 and 12 of said answer.

The motion to stirke was granted by Judge Grimball "as made."

A jury was drawn and testimony taken. W. S. Griffin, president of plaintiff corporation, was the only witness offered by plaintiff. This witness proved the execution of the two instruments referred to above as Exhibits "A" and "B." He testified that the contract between plaintiff and defendant was closed out on September 25, 1931, by a sale of the twenty-four bales of cotton at 4.15 cents per pound, and that the statement admitted in evidence as Exhibit 3 was mailed to defendant. He further testified that after the statement was mailed, defendant came to his office and ad-

mitted the correctness of the statement and his liability to plaintiff as shown therein. A copy of said statement is as follows:

"Greenville, S. C., Sept. 25, 1931.

"Mr. G. W. Bridwell,
   "Travelers Rest, S. C.

"In account with Cooper & Griffin, Inc.

"Statement of Fixing Price Twenty-Four 24 Bales of Cotton.

"Under our Purchase Contract with You of November 1, 1931, No. 79.

| Inv. Date | No. Bales | Marks | Weight | Price | Amount |
|-----------|-----------|-------|--------|-------|--------|
| 11-3 | 24 | Tags | 11530 Lbs. | | $922.40 |
| Fixed | | | | | |
| Price | | 11530 Lbs. @ 4.15 | | | 478.50 |
| | | | Due us | | $443.90 |

Contracts
7-25-24 October     $6.14
   Less                1.99
                     _____
                     $4.15  ·

E&OE"

At the conclusion of plaintiff's testimony defendant moved for a nonsuit upon the general ground that there was no evidence to support a verdict for plaintiff. This motion was overruled.

The defendant, the only witness, in his own behalf, denied that he had made any admissions of liability to plaintiff.

At the conclusion of defendant's testimony counsel for plaintiff moved for a directed verdict in plaintiff's favor for the full amount demanded in the complaint. This motion was granted, and the jury, by direction of the Court, found for plaintiff in the sum of $443.90, with interest.

Thereafter defendant moved for judgment in his favor notwithstanding the directed verdict, upon the grounds that

the written instruments sued on were too indefinite, uncertain, and incomplete as to be enforceable; and that under the terms of said instruments there arose no legal duty or obligation on the part of defendant to do or not to do anything except to deliver the cotton which he had done. This motion was overruled.

Defendant then moved for a new trial upon the ground that the jury should have been allowed to pass upon the question as to what the contract, if any, was. This motion was also overruled.

From judgment entered upon the directed verdict for plaintiff and from the various adverse rulings of the presiding Judge, defendant appeals to this Court upon nine exceptions.

Some of the exceptions assign error to the presiding Judge in striking out the allegations of Paragraphs 2 and 3 of the answer. These allegations were stricken out upon the grounds, stated inversely, that the written contract between the parties was plain and unambiguous and that its construction was a question of law for the Court; and that said allegations were irrelevant and constituted no defense to plaintiff's alleged cause of action. It appears from the two instruments that on November 1, 1930, plaintiff purchased from defendant twenty-four bales of cotton to be shipped promptly, f. o. b. Greenville, S. C.; and that plaintiff was to advance 8 cents per pound thereon. Just what was meant by the remaining terms or provisions of these instruments we are unable to say. The plaintiff was a cotton merchant and the terms of these instruments when construed in the light of the custom and usage obtaining in that class of contracts may mean, as plaintiff contends, that defendant became liable to plaintiff by reason of a decline in the price of cotton at the time said contract was to be closed; but we cannot, as a matter of law, place such a construction upon the papers before us. It is only when a contract is clear, unambiguous, and free from doubt that its construction presents a question of law for the Court. On

the other hand, when there is ambiguity, uncertainty, or doubt as to the proper construction of the contract, it becomes a question of fact for the jury to determine what the real intention of the parties was, and for their aid resort will be had to extrinsic evidence to show the conditions surrounding the parties, the circumstances under which the contract was executed, as well as the negotiations between the parties leading up to the execution thereof. See *Stackhouse v. Pure Oil Co. et al.,* 176 S. C., 318, 180 S. E., 188. Furthermore, the authorities hold that when a written agreement is couched in technical language or language peculiar to some particular trade, science, etc., the meaning of such language is subject to explanation and becomes a question of fact for the jury.

"In order that a pure question of law may be presented the terms of the contract must be uncontroverted, and clear and unambiguous. Questions as to the use of words of art or technical terms must not be involved; and a resort to extraneous circumstances and extrinsic facts, or to explanatory evidence, or a determination of the sense in which words are used, must not be required. The question must be one of construction, not intention." 13 C. J., 785.

"Where technical terms or words of peculiar meaning with reference to some particular science, trade, or art are employed in the contract, the question of their meaning is on conflicting evidence, one of fact for the jury, as where there is conflicting expert evidence as to a technical term. The question of whether words have such peculiar or special meaning is also for the jury. The construction of the contract, the proper meaning of such terms having been ascertained, remains a question of law. So, where it becomes necessary to introduce evidence of trade usages to explain the contract, the construction of the contract is for the jury under proper instructions." Id., 788.

At the end of the case of *Fagin v. Connoly,* 25 Mo., 94, 69 Am. Dec., 450, at page 457, there is to be found a note which, under the heading "Technical Terms and Words

Peculiar to Particular Trade or Business," makes this statement: "When written instruments contain technical terms, or words used in a sense peculiar to some particular art, trade, or business, it is proper to leave it to the jury to ascertain and determine the sense in which such terms are employed." Many cases are cited in support of the above proposition.

Being unable to construe the two written instruments in question and to say what the rights and liabilities of the parties were thereunder, we cannot say that the allegations of Paragraph 2 are irrelevant and constitute no defense to plaintiff's cause of action. Defendant alleged in that paragraph that the real agreement was that he should not be liable for any decline in the price of cotton. If he can show this without violating any rule of evidence, he may make out a complete defense. Again, the defendant alleged that there was no consideration to support the agreement embodied in Exhibit "B." It is elementary that every simple contract must be based upon some consideration. Being unable to construe the instrument in question, we cannot say that the defendant should not be permitted to prove the defense of lack of consideration as alleged by him.

Our view of the matter is that the duty will devolve upon the trial Court, as the case develops, by proper rulings and by proper instructions to the jury, to have the agreement between the parties ascertained and their respective rights and liabilities determined. It was error, therefore, to strike out the allegations of Paragraph 2; and it necessarily follows that the Court could not direct a verdict for plaintiff as was done in this case.

In our opinion the allegations of Paragraph 3 of the answer were properly stricken out. Appellant contends that said paragraph sufficiently alleged actionable fraud. Under the decisions of this Court, in order to plead this defense, it is necessary to allege that the person making the representations knew they were false

and that they were made with the intent to deceive the person to whom they were made and caused him to act to his damage.

"Except in those jurisdictions where a scienter is not an essential element of actionable fraud, it is necessary that a scienter be alleged." 27 C. J., 33.

"Except in those jurisdictions where an innocent representation may be actionable, a pleading setting up actual fraud must allege that the representations were made fraudulently; that is, it must aver that they were made with intent to deceive, or must allege facts from which such intent can be legitimately inferred." Id., 34.

In *Gem Chemical Co. v. Youngblood*, 58 S. C., 56, at page 59, 36 S. E., 437, 438, it is said: "In 9 Enc. Pl. & Prac. pages 684, 685, it is said: 'Fraud is never presumed, and in order to entitle a party to relief, either at law or in equity, on that ground it is essential that the fraud be distinctly alleged in the pleadings, so that it may be put in issue, and evidence thereof given. This rule is applicable as well to the pleadings of the plaintiff as to those of the defendant. In the absence of such an allegation, evidence of fraud will not be received at the trial.' On pages 686 and 687 of the same volume we find the following: "In alleging fraud it is well settled, both at law and in equity, that the mere general averment, without setting out the facts upon which the charge is predicated, is insufficient. Whether the fraud be alleged in the declaration, complaint, or bill, set up by way of defense in the plea, answer, or replication, it is essential that the facts and circumstances which constitute it should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called upon to answer.' In order to constitute a defense to the plaintiff's cause of action, on the ground that the defendants were deceived by misrepresentation and fraud, it was necessary to allege the scienter on the part of the plaintiff. *Wood v. Ashe,* 3 Strob., 64; *Read v. Duncan,* 2 Mc-

Cord, 167; *Houston v. Gilbert,* 3 Brev. [63], 64, [5 Am. Dec., 542]."

In *Bromonia Co. v. Greenwood Drug Co.,* 78 S. C., 482, at page 486, 59 S. E., 363, 364, it is said: "It is further contended that the answer alleged fraud and that under general allegations of fraud all testimony necessary to support it is admissible. As a general proposition, this is true, but actionable fraud must be alleged which includes the scienter on the part of the party sought to be charged (*Gem Chemical Co. v. Youngblood,* 58 S. C. [56], 59, 36 S. E., 437; *Poag v. Charlotte Oil & Fertlizer Co.,* 61 S. C., 190, 39 S. E., 345), as well as resulting damage or injury to the complainant (*Ruberg v. Brown,* 50 S. C. [397], 399, 27 S. E., 873). A careful reading of the allegations as to fraud set out in the fourth paragraph of the answer shows that it is defective in these essential particulars. Hence testimony as to fraud was properly excluded, and, if the demurrer which was overruled by the Circuit Court had been limited to the defense of fraud alone, it should and doubtless would have been sustained."

In *Brookland Bank v. Martin,* 105 S. C., 72, 89 S. E., 546, 547, it is said:

"The answer hardly pleads fraud by the bank; it does not in words; it does allege that the bank misrepresented the transaction, and falsely so; it does not allege that the bank had the secret and wicked purpose to deceive the defendant, and proceeded by denominated words and acts to carry out that intent.

"A complaint for fraud, like an indictment for crime, ought to signalize first the intent, and then the words spoken, and the acts done to carry out the intent."

We hold, therefore, that actionable fraud was not sufficiently pleaded in the third paragraph of the answer, and that said paragraph was properly stricken out by the presiding Judge.

Appellant contends that his motion for a nonsuit should have been granted. As stated above, W. S. Griffin, witness for plaintiff, testified that the contract between plaintiff and defendant was closed out on September 25, 1931, by a sale of the twenty-four bales of cotton at 4.15 cents per pound, and that the statement admitted in evidence as "Exhibit 3" was mailed to defendant. He testified also that after the statement was mailed, defendant came to his office and admitted the correctness of the statement and his liability to plaintiff as shown therein. This was some evidence that the construction as placed upon the agreement by the plaintiff was correct. It was not error, therefore, to refuse the motion for nonsuit. Neither was there error in refusing defendant's motion for judgment *non obstante veredicto*.

The judgment appealed from is reversed, and the case remanded for a new trial in accordance with the views herein expressed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE CARTER concur.

MR. JUSTICE BONHAM did not participate.