JAMESBURY CORP., Appellant,

v.

LITTON INDUSTRIAL PRODUCTS,
INC., Appellee.

Appeal No. 84–1079.

United States Court of Appeals,
Federal Circuit.

March 12, 1985.

Robert C. Miller, Oblon, Fisher, Spivak, McClelland and Maier, P.C., Arlington, Va., for appellant. With him on the brief was Arthur I. Neustadt, Arlington, Va.

Donald R. Dunner, Finnigan, Henderson, Farabow, Garrett and Dunner, Washington, D.C., for appellee; Allen M. Sokal, Finnigan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., of counsel; Spencer T. Smith, Hartford, Conn., on the brief.

Before NIES, NEWMAN and BISSELL, Circuit Judges.

NIES, Circuit Judge.

## I.

Jamesbury Corp., the plaintiff below, charged Litton Industrial Products with infringing claims 7 and 8 of its U.S. Patent No. 2,945,666 to Freeman entitled "Ball Valve".[1] Following a seven day jury trial, the jury returned a verdict for Litton, concluding, in answer to an interrogatory, that the asserted claims did not differ in any "significant particulars" from the prior art.[2] Under the court's instructions, this finding meant that the claims were invalid under 35 U.S.C. § 102(a)[3] for lack of novelty. Jamesbury had timely objected to the jury charge on the issue of novelty and to the wording of the particular interrogatory under review, as well as to other instructions. No instructions were given with respect to obviousness of the claimed inventions, Litton having agreed that obviousness was not asserted as a ground for holding the claims invalid. Following entry of judgment, Jamesbury filed a motion under Fed.R.Civ.P. 50(b) for judgment notwithstanding the verdict, which was denied by the district court. In ruling on the motion, the district court stated:

> 1. Does the ball valve construction shown and described in the Saunders British patent or any other prior art differ in any significant particulars from the ball valve defined by the express language of claims 7 and 8 of the Freeman patent?
> As to claim 7     Yes ___     No  X
> As to claim 8     Yes ___     No  X
> *     *     *     *     *     *
>
> If you answer "No" as to both claim 7 and claim 8, do not answer any further questions.
> The remaining questions were directed to infringement, laches, estoppel and damages. In accordance with the above direction, the jury answered only interrogatory No. 1.

1. This case has been twice before the United States District Court for the District of Connecticut, and once before the United States Court of Appeals for the Second Circuit. *Jamesbury Corp. v. Litton Industrial Products, Inc.,* 442 F.Supp. 266, 196 USPQ 544 (D.Conn.1977), *rev'd,* 586 F.2d 917, 199 USPQ 641 (2d Cir.1978), *cert. denied,* 440 U.S. 961, 99 S.Ct. 1503, 59 L.Ed.2d 774 (1979). In the first district court decision on Litton's motion for summary judgment, claims 7 and 8 were held invalid for "overclaiming", that is, for claiming an entire ball valve rather than simply an improved sealing ring in the valve. On appeal to the Second Circuit, the "overclaiming" defense was rejected and the case remanded for trial. The technical subject matter of the claims on appeal has been adequately described in these opinions, and familiarity with the discussion contained therein will be presumed. This opinion contains only such background as is necessary for an understanding of the position of the parties on appeal.

2. Jury interrogatory No. 1 reads as follows:

3. 35 U.S.C. § 102(a) reads:
A person shall be entitled to a patent unless—
(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patents....

The jury returned a verdict for the defendant in this patent infringement suit. The plaintiff has moved for judgment notwithstanding the verdict. The plaintiff is seeking judgment on all disputed issues: the validity of the patent, infringement of the patent, the amount of damages, and the defenses of laches and estoppel.

In its response to a special interrogatory, the jury made explicit its finding that the patent was invalid because of lack of novelty over the prior art. Thus the crucial issue to be resolved is whether the jury's finding of invalidity should be set aside. Judgment n.o.v. should only be granted when:

(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Mattivi v. South African Marine Corp.,* 618 F.2d 163, 168 (2d Cir.1980).

Neither of the tests for judgment n.o.v. is satisfied by the plaintiff's motion. The plaintiff alleges that the defendant has produced no evidence regarding the level of ordinary skill in the ball valve art. Although such proof is essential to support a finding of invalidity because of obviousness, *see Environmental Designs v. Union Oil Co.,* 713 F.2d 693, 695 (Fed.Cir.1983), the plaintiff has cited no authority requiring such proof to support a finding of invalidity because of lack of novelty over the prior art. On the issue of novelty, there was ample evidence to support the jury's verdict; there was certainly not an overwhelming amount of evidence in the plaintiff's favor that reasonable and fair minded men could not arrive at a verdict against it.

For the foregoing reasons, the motion for judgment n.o.v. is denied.

In this appeal, Jamesbury argues that because of erroneous and prejudicial error in the instructions to the jury, it is entitled at least to a new trial. Jamesbury further asserts that because lack of novelty was not established and other grounds asserted for holding the claims invalid, namely, obviousness and inequitable conduct, were withdrawn or waived, the court erred in its ruling on Jamesbury's motion JNOV. We agree and, therefore, reverse the holding of invalidity of claims 7 and 8. The case is remanded for resolution of other issues.

## II.

■ The standard of review of instructions is prejudicial legal error. *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1512, 220 USPQ 929, 939 (Fed.Cir. 1984).

## A.

■ Jamesbury first attacks the following instruction which laid the foundation for the jury's deliberations:

[T]he public is a silent but nevertheless an important, an interested party in all patent litigation and it is entitled to protection against the monopolization of what is not lawfully patentable. In other words, it's not simply between Jamesbury and Litton. Other people are affected by it.

So I charge you that it is your duty to *subject the invention* defined in claims seven and eight of the Freeman patent *to careful scrutiny before endorsing Jamesbury's right to the patent monopoly* defined by such claims. [Emphasis added.]

Jamesbury argues that the effect of this instruction was to create a presumption of invalidity requiring Jamesbury to prove, beyond careful scrutiny, that it was entitled to maintain a monopoly, which, impliedly, was against the public interest. We agree that this instruction is legally erroneous and prejudicial.

The language that the jury must give "careful scrutiny" before "endorsing" the "patent monopoly" cannot be approved.

While the language does not rise to the level of a presumption of invalidity, it does incorrectly suggest that the jury must affirmatively find the patent valid, which is never appropriate. *See Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 762, 221 USPQ 473, 480 (Fed.Cir.1984) ("court never 'declares' a patent valid").

■ Further, this court has disapproved of a challenger's characterization of a patentee by the term "monopolist", which is commonly regarded as pejorative. *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1574, 220 USPQ 584, 590 n. 4 (Fed.Cir.1984); *Schenck v. Nortron Corp.,* 713 F.2d 782, 784, 218 USPQ 698, 699 (Fed. Cir.1983). In both of the cited cases, a bench trial was involved. Here, not only was Litton's counsel not admonished for so characterizing Jamesbury before the jury, a more serious impropriety than in a bench trial, but also the characterization found its way into the instructions. As stated in *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed.Cir. 1983), the characterization of a patent as a "monopoly" is misdirected:

> The phrase "patent monopoly" appears at various points. Under the statute, 35 U.S.C. § 261, a patent is a form of property right, and the right to exclude recognized in a patent is but the essence of the concept of property. *Schenck v. Nortron Corp.,* 713 F.2d 782, 218 USPQ 693 (Fed.Cir.1983).

Instructions which supplement the statutory body of law governing patent validity by interjecting language to the effect that the public must be "protected" against a "monopoly," a term found nowhere in the statute, are likely to be prejudicial and should be avoided.

### B.

This court has repeatedly held that the facts leading to a conclusion of invalidity must be established by clear and convincing evidence. *See, e.g., American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1360, 220 USPQ 763, 771 (Fed.Cir. 1984) and its progeny. This standard is unvarying. Therefore, Jamesbury correctly asserts that error was committed by the district court in giving the following instruction to the jury:

> If you find that to be so *by a preponderance of the evidence,* that the Saunders British patent or other prior art disclosed substantially the same things as set forth in Freeman's claims 7 and 8 and in the same scope as here asserted for infringement purposes, then such claims 7 and 8 are void for lack of novelty. [Emphasis added.]

Litton responds that elsewhere in the instructions, the jury was instructed on the "clear and convincing" standard of proof.

The record shows that the jury was charged at the close of one day's proceedings. Prior to beginning its deliberations the next day, after discussions with counsel, the court reinstructed the jury that the defendant had the burden of proving by clear and convincing evidence that the Patent and Trademark Office (PTO) was wrong in issuing the patent. The court then went on to instruct that where certain prior art was not considered by the PTO, or if the PTO was misled with respect to what a reference meant, then the burden was merely a preponderance of the evidence. Further, the court advised that, if the patentee were guilty of fraud (despite the absence of a fraud defense in this case), the plaintiff would have to prove that its patent was valid.[4] Finally, the court summed up as follows:

> There's a presumption it [patent] was valid. Can be overcome by clear and convincing proof if certain prior art was not considered. It can be overcome merely by a preponderance of the evi-

---

**4.** In connection with the inequitable conduct defense, we observe that even though expressly withdrawn, the operation of that defense was described to the jury. Under these circumstances, reference in the instructions to a patent owner misleading the examiner was prejudicial. Further, expanding the jury's general knowledge of legal matters not material to the trial does nothing to enhance the jury's comprehension or the proper administration of justice.

dence if the patent examiner was misled as to the meaning of that prior art.

If we assume the transcription is correct, this additional instruction is at best confusing and continues to erroneously vary the quantum of proof depending on the circumstances in contravention of the precedent of this court. Contrary to Litton's argument, an instruction that is defective because of a misstatement of law is not cured simply by a correct statement appearing elsewhere. More is required of jury instructions than to state the law correctly somewhere in the instructions. The question, once a misstatement has been made, is whether the error was so egregious, considering the instructions as a whole, as to require the verdict to be set aside. In this case we hold that it was.

### C.

Jamesbury's objections (also made to the district court) that the instructions and interrogatory No. 1, reproduced at note 2, *supra,* misstate the law respecting novelty were legitimate. The instruction (quoted in B above) to the effect that the claims are invalid if the prior art Saunders patent discloses "substantially the same things" as claims 7 and 8, and Interrogatory No. 1 which speaks of the claims not differing in "significant particulars", are not legally correct.

The error in this interpretation of the statutory requirement of novelty is the same as that which was addressed in *Connell,* 722 F.2d at 1548, 220 USPQ at 198:

The opinion says anticipation may be shown by less than "complete anticipation" if one of ordinary skill may in reliance on the prior art "complete the work required for the invention", and that "it is sufficient for an anticipation 'if the general aspects are the same and the differences in minor matters is only such as would suggest itself to one of ordinary skill in the art.' " Those statements relate to obviousness, not anticipation. Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim. *Soundscriber Corp. v. U.S.,* 360 F.2d 954, 960, 148 USPQ 298, 301 [175 Ct.Cl. 644] (1966). A prior art disclosure that "almost" meets that standard may render the claim invalid under § 103; it does not "anticipate."

Here, as well, anticipation is not shown by a prior art disclosure which is only "substantially the same" as the claimed invention.

Litton argues that elsewhere the district court amplified its interpretation by speaking of the prior art disclosing the claimed invention "in complete terms." However, that additional paragraph of instructions also speaks of *"substantially* the same subject matter ... *in complete terms, thus enabling* a man skilled in the art to understand and practice the invention." We see no correction of the legal standard in the above statement.

### III.

Because of the above legal errors, the verdict of invalidity for lack of novelty (i.e., anticipation) cannot stand. Jamesbury would be entitled to a new trial as a result of those legal errors; Jamesbury moved, however, for judgment NOV. We will, accordingly, turn to the question of whether Jamesbury was entitled to judgment NOV considering the evidence under the proper legal standard of 35 U.S.C. § 102. As stated in *Connell,* 722 F.2d at 1546, 220 USPQ at 197:

The court must inquire, under the proper legal standard of patentability, whether the evidence and inferences reasonably drawn therefrom, when viewed in the light most favorable to the non-moving party and without weighing credibility, is or is not substantial. [Citation omitted.]

Accordingly, we must determine whether there exists evidence of record upon which a jury might properly have returned a verdict in Litton's favor when the correct legal standard is applied. If there is not, Jamesbury was entitled to have the question removed from the jury and decided as a matter of law. 9 Wright

& Miller, *Federal Practice & Procedure: Civil* § 2524 (1972). The standard of review by a court of appeals is the same. The question of whether the evidence is sufficient to create an issue of fact for the jury is itself a question of law, which we will now decide. *Id.*

■ The precise question here is whether reasonable persons could conclude that Litton proved by clear and convincing evidence that each and every limitation of claim 7 and 8 is disclosed by Saunders.

The claims in suit are the following:

7. A ball valve comprising: a casing adapted to be connected to a pipe line and having a valve chamber and inlet and outlet openings; a ball mounted in said chamber and having a port; and a sealing ring mounted in said chamber around one of said openings, *said ring having a lip projecting inward toward the axis of the ring and engaging the ball, said lip being free to bend in the axial direction of the ring and increasing in thickness outward in the radial direction of the ring,* and said ball being rotatable between an open position in which said port is in register with the opening surrounded by said ring and a closed position. [Emphasis added.]

8. A ball valve as described in claim 7, said lip having side faces disposed one toward the ball and one away from the ball, and said faces diverging from each other substantially uniformly outward in the radial direction of the ring.

Litton does not dispute that the claim language "a lip ... engaging the ball" means, in light of the specification, that the lip is "pushing against the ball." In the words of the Second Circuit in the previous appeal of this case:

> The seal, which is given a more technical description in claims 7 and 8, has a lip which remains in constant contact with the ball, which may flex to permit rotation and reduce wear, but which is so constructed and placed that it remains tight against the surface of the ball at all times.

586 F.2d at 919, 199 USPQ at 643.

Freeman accomplishes this constant tight contact by a lip on the seal or ring which interferes with the placement of the ball. The lip protrudes into the area where the ball will be placed and is, thus, deflected after the ball is assembled into the valve. Thus:

Inward Radial Direction

Because of this constant pressure, the Freeman valve is described as providing a particularly good seal when regulating a low pressure stream.

Nothing in Saunders discloses the lip in one position before assembly with the ball and in a deflected position after the ball is in position. Specifically, Saunders teaches "a narrow flange-like portion to the back of which the fluid pressure has access so pressing this portion against the plug [ball]" and that the ring (but not specifical-

ly the lip or flange) is "in engagement with the spherical plug [ball] surface."

The disclosed structure in Saunders is different from that in Jamesbury. As shown in the patent and as more clearly represented by Litton, Saunders shows:

Saunders
Patent
(inverted)

Litton Drawing
Of Saunders

The Saunders specification further states, "It will be observed that the fluid pressure [from left to right] will act mainly on the inner flange-like portion of the ring [14] which is relatively flexible and will therefore be pressed *by the fluid pressure* into good contact with the valve plug [1]." (Emphasis added.) Saunders speaks of improving the seal as the pressure increases.

Nevertheless, relying on the testimony of its expert witness, Professor Youngdahl, Litton maintains that Saunders meets the claim limitation as interpreted to mean constant contact of the lip in a sealing engagement with the ball. His testimony is as follows:

> If that ball were removed, if a Saunders type seal were put in the position so that the, it engaged the body and then the end cap were bolted up, the Saunders lip would bend away from the end cap increasing the gap that's there and move toward where the ball would be. Of course, when you put the ball in and bolt it up with the ball, you're going to push that lip back. But bending it forward means that it springs that way. Then when you put the ball in and bend it back you have a preloading of the lip and the ball (indicating).

Dr. Youngdahl also testified that he made a model which disclosed this phenom-

ena. Jamesbury's witness disputed the accuracy of the model as a representation of Saunders.

Jamesbury's witnesses testified that the disclosure of Saunders shows no preload or interference between the Saunders flange or lip and the ball, the lip merely touching the ball; that the seal or joint occurs below the lip in the main body of the ring; that under pressure the lip pushes the ball to make a better seal in the main body (compression seating area); and that the lip only sealingly engages the ball when under pressure.

Saunders was considered by the PTO during examination and by the U.S. Court of Claims in an infringement suit on the same claims 7 and 8 against the government. *Jamesbury Corp. v. United States*, 518 F.2d 1384, 187 USPQ 720, 207 Ct.Cl. 516 (1975). Litton, through its Contromatics division, was one of the government's suppliers of the infringing valve.[5] Both the PTO and the Court of Claims concluded that claims 7 and 8 were patentable over the Saunders reference. The Court of Claims held, specifically, that Freeman claims 7 and 8 were neither anticipated by nor obvious from Saunders. This decision was based on a finding that:

> [T]he term "engaging the ball" recited in claims 7 and 8 means that the lip contacts the ball with sufficient force to

---

5. This suit concerns non-government sales.

provide a fluid tight seal.... The Saunders flange or lip only sealingly engages the ball 1 on the upstream side when the fluid pressure forces the lip against the ball and never sealingly engages the ball on the downstream side because there is no fluid pressure there to force the lip against the ball. The Saunders sealing ring provides a compression type of seal which depends upon the ball pressing into the material of the ring. * * * The seal of Saunders depends primarily on the contact between the ball and the body of the sealing ring, and the flange or lip sealingly contacts the ball on the upstream side when the fluid pressure increases.

207 Ct.Cl. 516, 551–52.

Dr. Youngdahl's explanation for the allowance of those claims was, "I don't believe that anyone ever explained the action of the Saunders seat to them and that they understood that there was a preload." Further, Litton asserts that Jamesbury misrepresented to the PTO that a patentable difference existed between Freeman and Saunders in "that the upstream sealing ring of Saunders' ball valve would leak, whereas the upstream Jamesbury sealing ring would not leak." The Youngdahl model assertedly showed that there was no leak.

The issue, of course, is not whether Saunders' valve leaks or does not leak, but whether Saunders discloses a lip which sealingly engages the ball, i.e., whether the Saunders lip functions as the claim limitation requires and whether reasonable persons would find the evidence clear and convincing that it does meet the claim. *SSIH Equipment S.A. v. U.S. International Trade Commission*, 718 F.2d 365, 383, 218 USPQ 678, 693 (Fed.Cir.1983) (Nies, J., additional views).

Litton argues that the testimony of its expert, Dr. Youngdahl, which was not before the PTO or the Court of Claims, to the effect that this limitation is found in Saunders is substantial evidence of anticipation. Jamesbury argues that the record as a whole including the unchallenged testimony discrediting Dr. Youngdahl's model of Saunders results in no evidence on which a reasonable jury could find anticipation, particularly in view of the consideration of the Court of Claims and the PTO of the same art. While the decisions of the examiner and the Court of Claims are, of course, not binding in this litigation, we conclude that Dr. Youngdahl's testimony with respect to Saunders is not of such character, when viewed with the reference itself and the contrary testimony of the Jamesbury witnesses, as to overcome clearly and convincingly the presumption of validity, 35 U.S.C. § 282. Nor does it persuade us that deference is not due the full and careful analysis by the Court of Claims and its determination that the *lip* in Saunders does not sealingly engage the ball at all times. The meticulous opinion of then Commissioner Lane [6] indicates full comprehension of how the valves work. Thus, Dr. Youngdahl's testimony is not substantial evidence, in view of the record as a whole, to support a determination of invalidity for lack of novelty.

Since a reference which does not satisfy one limitation of a claim does not anticipate, we need not address in detail the arguments of Jamesbury concerning other missing elements in Saunders. We observe, however, that at least one additional limitation of claim 7 is not disclosed therein.

In particular, claim 7 requires that the lip be "increasing in thickness outward in the radial direction of the ring." Referring to Figures 5 and 6 of the '666 patent, reproduced *supra*, the specification defines "lip" as follows:

The part of the ring [25] which first engages the ball [27] is a free standing interior lip 25c having a rounded inner surface 25d, and an oblique surface 25e. Leading to the lip is an oblique surface

6. The Court of Claims adopted the opinion of then Commissioner Donald E. Lane (reported at 153 USPQ 672 (1967)), who was later (1969– 1979) a judge on the U.S. Court of Customs and Patent Appeals, one of our predecessor courts.

25f on which the ball will eventually be seated when the lip is deflected sufficiently under load.

Thus, when read in light of the specification, the claimed limitation that the lip increase in thickness outward reads upon the embodiment illustrated in Figures 5 and 6. When this definition of "lip" is compared to the Saunders device, the claim limitation is simply not met. Instead of "increasing in thickness outward" as required in the claim, the properly defined lip portion in Saunders does not change in thickness along its radial axis. It is unimportant that Litton has found a way to redefine "lip" in terms which encompass the Saunders device, since we are compelled to seek such guidance from the specification, and not from the accused infringer.

With respect to claim 8, Litton's witness acknowledged that the geometry of the two lips, which is what the claim specifies, is different.

With respect to other validity issues, Litton specifically withdrew its request for an instruction on obviousness of the claims. The following colloquy occurred during the district court's review of Litton's requested instructions:

> The Court: I think Youngdahl, Professor Youngdahl said this isn't any different than Saunders. He didn't say it's something that's obvious and *so I don't know that any obviousness ever came into play in this case.* You're nodding your head.
>
> MR. SMITH [for Litton]: *No, it didn't.*
>
> The Court: Mr. Smith, so—
>
> MR. SMITH: *I agree.*
>
> The Court: If you agree then I guess I won't have any difficulty with—35 is out, for one reason, and then 35 through 37, they all deal with obviousness. [Emphasis added.]

In this appeal, Litton did not assert that, if the judgment were to be overturned, Litton was entitled to retry obviousness. Under the circumstances, the issues of obviousness of claims 7 and 8 have been waived.

In view of the absence of sufficient evidence to support a holding of invalidity on the ground of anticipation, and the withdrawal of alternative attacks on the patent, we conclude that the district court erred in failing to grant Jamesbury's motion for JNOV with respect to validity of claims 7 and 8. Accordingly, the court's ruling on the motion must be reversed.

### IV.

Because the issues of infringement, laches and estoppel were not resolved at the conclusion of the trial, the case must be remanded for their disposition. The decision of this court in *Envirotech Corp.* provides guidance on proper instructions if the issue of infringement is again tried to a jury. As stated therein:

> In general, a finding of infringement depends on whether the accused device falls within the scope of the asserted claims as properly interpreted. *Kalman v. Kimberly-Clark Corp.,* 713 F.2d 760, 770, 218 USPQ 781, 788 (Fed.Cir.1983). The patented invention as indicated by the language of the claims must first be defined (a question of law), and then the trier must judge whether the claims cover the accused device (a question of fact). *See Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir.1983); *SSIH Equipment S.A. v. USITC,* 718 F.2d 365, 375, 218 USPQ 678, 688 (Fed.Cir.1983). The patent owner must show by a preponderance of the evidence that the accused [device] has infringed his patent. *Hughes Aircraft v. United States,* 717 F.2d 1351, 1361, 219 USPQ 473, 480 (Fed. Cir.1983); *SSIH, supra;* Chisum, *Patents,* 18.06[1] (1983).

730 F.2d at 758, 221 USPQ at 477.

Further, the instructions should be tailored to the dispute in this case. As stated in *Structural Rubber Products Co. v. Park Rubber Co.,* 749 F.2d 707, 723, 223 USPQ 1264, 1276 (Fed.Cir.1984):

> We join other courts that have held that the duty of a trial court in any jury trial is to give instructions which are meaningful, not in terms of some ab-

stract case, but which can be understood and given effect by the jury once it resolves the issues of fact which are in dispute. *See, e.g., Choy v. Bouchelle,* 436 F.2d 319 (3rd Cir.1970); *Marshall v. Isthmian Lines, Inc.,* 334 F.2d 131, 138 n. 15 (5th Cir.1964).

Thus, the court should instruct the jury on what the claim means in light of this decision and instruct what elements of the claim are disputed to be found in the Litton valves literally or under the doctrine of equivalents.

### Conclusion

For the foregoing reasons, the judgment is *reversed* and the case is *remanded* for disposition of all remaining issues other than the validity of claims 7 and 8 of Freeman Patent No. 2,945,666.

REVERSED AND REMANDED.

Decision on counts I and II affirmed; Count V vacated and case remanded with directions.