Ernest D. **STRAIN**, Jr. and **Master Systems, Inc.**, Plaintiffs,

v.

Bob **HOWARD**, Defendant.

No. GC85–337–LS–O.

United States District Court,
N.D. Mississippi,
Greenville Division.

Aug. 24, 1987.

Arnold F. Gwin, Greenwood, Miss., Thomas S. Keaty, Jeffrey S. Chow, Betty J.

James, Keaty & Keaty, New Orleans, La., for plaintiffs.

C. Kurt Henke, Holcomb, Dunbar, Connell, Chaffin & Willard, P.A., Clarksdale, Miss., Emmette F. Hale, III, University, Miss., for defendant.

## OPINION

SENTER, Chief Judge.

Ernest D. Strain and Master Systems, Incorporated, bring this action alleging that the defendant has infringed upon their patented fish pond aerator by manufacturing and distributing a similar aerator. This case is presently before the court on plaintiffs' motion for summary judgment.

## I.

Some years ago, Ernest D. Strain developed plans for a pump which would serve to aerate fish ponds and other bodies of stagnant water. Designed primarily for the catfish farmer, Strain's aerator pulled water in and injected it out through two cylinders set perpendicular to the main intake opening. When placed at the edge of a pond, the pump aerates the water and provides fish with a healthier environment.

Strain applied for and received letters of patent for his aerator. Absent proof to the contrary, this patent will be presumed valid. 35 U.S.C. § 282.

Strain subsequently conveyed to Master Systems, Incorporated, the exclusive right to manufacture and distribute his aerator. Master Systems now is in the process of selling Strain aerators throughout the area.

Sometime between April of 1984 and August of 1985, defendant Bob Howard also began to manufacture and sell a pond aerator similar in many respects to the Strain aerator. Howard never paid Strain or Master Systems a royalty fee for use of their patent, and he asserts that he is not required to do so. Howard defends his position in two ways: First, he challenges the validity of the Strain patent. Second, he asserts that his aerator is different in key respects from the Strain aerator and that his aerator, therefore, is not infringing upon the plaintiffs' patent.

Plaintiffs have demanded payment from Howard of the appropriate royalty fee, but their demands have been rejected. Plaintiffs filed the instant complaint with the court on October 30, 1985.

## II.

"Summary judgment is as appropriate in a patent case as in any other" when it is shown that no genuine issue of material fact remains for decision and that the movant is entitled to judgment as a matter of law. *Barmag Barmer Maschinenfabrik A.G. v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed.Cir.1984). As the Federal Circuit recently noted, however,

It is at least conceivable that comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process would reflect such an absence of material fact issue as to warrant summary judgment of infringement or noninfringement. Because infringement is itself a fact issue, however, a motion for summary judgment of infringement or noninfringement should be approached with a care proportioned to the likelihood of its being inappropriate.

*D.M.I., Inc. v. Deere and Co.*, 755 F.2d 1570, 1573 (Fed.Cir.1985).

The infringement inquiry is broken down into two steps: First, the scope of the patent claims must be ascertained, and then the trier must decide whether the claims "read on" the accused product, that is, whether the claimed invention is being made, used, or sold by the alleged infringer. *Id.* at 573; *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed.Cir.1985). If extrinsic evidence or expert testimony is not required to interpret the claim language, then the first step may be resolved by the court as a matter of law. *Palumbo v. Don-Joy Co.*, 762 F.2d 969 (Fed.Cir.1985). The second step, as noted above, is a question of fact.

## III.

The patent holder bears the burden of proving infringement by a prepon-

914

derance of the evidence.[1] *Environtech Corp. v. Al George, Inc.,* 732 F.2d 1572 (Fed.Cir.1984). This may be accomplished by showing either (a) literal infringement or (b) infringement under the doctrine of equivalents.

Literal infringement may be found if the accused device falls clearly within the scope of the asserted claims as properly interpreted. *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753 (Fed.Cir.1984). If literal infringement is established by a preponderance of the evidence, then the patentee will be entitled to recover as a matter of law.

Literal infringement may be avoided, however, by the presence of minor modifications in the challenged device. As a result, courts have developed the "doctrine of equivalents" to protect patentees. The Supreme Court, in defining the doctrine, has stated that

> The essence of the doctrine is that one may not practice a fraud on a patent.... "To temper unsparing logic and prevent an infringer from stealing the benefit of the invention," a patentee may invoke this doctrine to proceed against the producer of a device "if it performs substantially the same function in substantially the same way to obtain the same result." The theory on which it is founded is that "if two devices do the same work in substantially the same way, and accomplish the same result, they are the same, even though they differ in name, form, or shape."

*Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608–09, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950) (citations omitted).

What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. *Id.* Equivalence, in patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose in ev-

ery respect. *Id.* Where the defendant has appropriated the material features of the patent in suit, infringement will be found "even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement." *Atlas Powder v. E.I. du Pont de Nemours,* 750 F.2d 1569, 1581 (Fed.Cir.1984) (footnote omitted).

## IV.

■ In the case *sub judice,* the defendant attempts to defeat plaintiffs' motion for partial summary judgment by arguing that the claim language is subject to different interpretations, especially when referring to "streams of water" which are "oppositely directed" in a "generally colinear" fashion. Although the patent does not expressly define the term "generally colinear," it is obvious from a reading of all the claims that the aerator is discharging water through its intake cylinders in two streams, oppositely directed and roughly parallel to the edge of the pond. Claim interpretation in this case will be a matter of law.

Defendant next attempts to prevent entry of summary judgment by noting the slight change in angle in the ends of his ejection cylinders. While the court expresses doubt as to the importance of this change, *see Atlas Powder, supra,* it is apparent that "the use of expert witnesses in the present case would be helpful in ascertaining what one of ordinary skill in the art of water aeration and fish production would consider interchangeable with the ejectment of streams of water in a "generally colinear fashion," and whether the modification in Howard's pump is legally significant. *Cf. Palumbo v. Don-Joy Co., supra.*

Plaintiffs' motion for partial summary judgment shall accordingly be denied. The parties will be offered the opportunity to present proof on the questions of both patent validity and patent infringement.

---

1. By contrast, the standard for invalidity is clear and convincing evidence, and the burden of persuasion is on the party seeking to challenge the patent in issue. *See Jamesbury Corp. v. Citton Indus. Products, Inc.,* 756 F.2d 1556, 1559 (Fed.Cir.1985).

An order shall issue in conformity with this opinion.