991 F.2d 812
 29 U.S.P.Q.2d 1393
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re BURKE, INC., PERSONAL MOBILITY VEHICLE PATENT LITIGATION.
BURKE, INC., Plaintiff-Appellant,
v.
EVEREST & JENNINGS, INC., Defendant/Cross-Appellant,
and
Invacare Corp., Defendant-Appellee.
BURKE, INC., Plaintiff-Appellee,
v.
EVEREST & JENNINGS, INC., Defendant-Appellant,
and
Invacare Corp., Defendant-Appellant.
 Nos. 92-1173, 92-1174 and 92-1301.
 United States Court of Appeals, Federal Circuit.
 March 31, 1993.
 
 Before ARCHER, MICHEL and RADER, Circuit Judges.
 ARCHER, Circuit Judge.
 
 
 1
 Burke, Inc. appeals from the judgment of the United States District Court for the Central District of California (MDL Docket No. 809-JSL), entered November 29, 1991, on an order directing a verdict that claim 1 of U.S. Patent 4,560,739 is invalid and not infringed by Everest & Jennings, Inc. (E & J) and Invacare Corp. We vacate the judgment and remand for trial.[1]
 
 DISCUSSION
 
 2
 U.S. Patent No. 4,560,739, which issued to Kramer (the Kramer patent), is directed to a personal mobility vehicle, a small, electrically powered three-wheel device, commonly referred to as a scooter, that gives mobility to handicapped or elderly persons. Burke, assignee of the Kramer patent, sued E & J and Invacare alleging that E & J's "Carrette" and Invacare's "Tri-Rolls" products infringed claim 1 of the Kramer patent.
 
 
 3
 At the close of Burke's case in chief, E & J and Invacare moved for a directed verdict that claim 1 is invalid for indefiniteness and not infringed.[2] The court granted the motion, and this appeal followed.[3]
 
 I.
 
 4
 We review de novo the question whether E & J and Invacare were entitled to a directed verdict. See Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1577, 19 USPQ2d 1513, 1516 (Fed.Cir.1991). In order to decide whether E & J and Invacare were so entitled, we, as was required of the district court,
 
 
 5
 must determine whether there exists evidence of record upon which a jury might properly [return] a verdict in [Burke's] favor when the correct legal standard is applied. If there is not, [E & J and Invacare were] entitled to have the question removed from the jury and decided as a matter of law.
 
 
 6
 Jamesbury Corp. v. Litton Indus. Prods., Inc., 756 F.2d 1556, 1560, 225 USPQ 253, 257 (Fed.Cir.1985). In making this determination, this court will reverse a decision on an issue of law if the decision was incorrect as a matter of law. See Read Corp. v. Portec, Inc., 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992); Heisig v. United States, 719 F.2d 1153, 1158 (Fed.Cir.1983). As to factual matters, the district court in the first instance, and this court on appeal, must determine as a matter of law whether E & J and Invacare have demonstrated a lack of substantial evidence which could support a verdict in favor of Burke. See Read Corp., 970 F.2d at 821, 23 USPQ2d at 1431. In directing a verdict, the court was required to view all the fact evidence in a light most favorable to the nonmovant. It could not determine the credibility of witnesses or choose between conflicting fact evidence, and it was required to draw all reasonable inferences in favor of the nonmovant. See Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1513, 220 USPQ 929, 936 (Fed.Cir.1984). The ultimate question in this case is whether E & J and Invacare have demonstrated that, at this particular stage of the litigation, they are entitled to judgment as a matter of law.
 
 II.
 
 7
 The district court directed a verdict that claim 1 is invalid for indefiniteness under 35 U.S.C. § 112, para. 2 (1988), holding that the term "removably connecting" in paragraph 1(b)(6) of claim 1 failed to "particularly point out and distinctly claim" Kramer's invention.[4]
 
 
 8
 Indefiniteness is a question of law, Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1576, 1 USPQ2d 1081, 1088 (Fed.Cir.1986), which must be proved by the party asserting it by clear and convincing evidence, see Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1375, 231 USPQ 81, 87 (Fed.Cir.1986). A claim is indefinite where those skilled in the art would not understand what is claimed when reading the claim language in light of the specification and prosecution history. See Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 1218, 18 USPQ2d 1016, 1030 (Fed.Cir.1991); Texas Instruments Inc. v. United States Int'l Trade Comm'n, 871 F.2d 1054, 1063, 10 USPQ2d 1257, 1263-64 (Fed.Cir.1989); Orthokinetics, Inc., 806 F.2d at 1576, 1 USPQ2d at 1088.
 
 
 9
 Burke asserted that one of ordinary skill in the art would understand the term "removably connecting" to mean separable without the need for tools. The district court rejected this argument on the basis that "nothing in the dictionary definition of the word [removably], or in common usage, or anywhere in the patent" supports a conclusion that the claim means connecting in such a way as to be separable without the need for a tool.[5]
 
 
 10
 Contrary to the district court's statement, the patent specification shows that a purpose of the patented vehicle is to enable users with limited dexterity to easily separate the vehicle's various modular components. The specification describes a bayonet locking pin used to separate the drive unit from the floor pan. The specification also discloses other connections allowing the connected components to be readily separated: plugs and sockets are used to undo electrical connections; a lever is used to release the seat; and a handle or strap is used to lift the battery from the floor pan. "The patent law does not require that all possible [connections] be listed in the patent, let alone that they be listed in the claims." Orthokinetics, Inc., 806 F.2d at 1576, 1 USPQ2d at 1088. We therefore disagree with the district court that the patent fails as a matter of law to adequately disclose a definite meaning for the term "removably connecting."
 
 
 11
 Further, during Burke's case in chief Kramer testified that a person of ordinary skill in the art would understand "removably connecting" to mean a connection that is separable without the use of tools. This testimony was corroborated by Invacare's own expert, Hymie Pogir, whose deposition reflects that he had no problem understanding a distinction between a tools and no-tools connection. In spite of this evidence, the district court viewed the "ordinary meaning and usage" of "removably" as designating a removable component connected to a stationary component that can be separated from the stationary component leaving both components intact, i.e., not designating a removable component that is connected to a stationary component by way of a third component. Assuming that this "ordinary meaning" has record support that it represents an understanding of those of ordinary skill in the art, it is only one part of the evidence. On motion for directed verdict, the district court erred as a matter of law in favoring this evidence, and disregarding that which supported Burke's position.
 
 
 12
 On appeal, E & J and Invacare do not seriously argue that the district court was correct in holding that "removably connecting" means nothing definite to those of ordinary skill in the art. Instead, they argue that direction of the verdict in this case was required under the Supreme Court decision in Permutit Co. v. Graver Corp., 284 U.S. 52 (1931), an argument rejected by the district court. In Permutit, the Court held a patent invalid for indefiniteness where the plaintiff claimed at trial that his invention was different from what had been claimed in his patent. See id. at 58; see also 2 D. Chisum, Patents, § 8.03[b] (1992) (discussing Permutit ). Here, the issue is the meaning of claim language; Burke does not contend that Kramer's invention was different from what had been claimed. Permutit is, therefore, inapposite.
 
 
 13
 Accordingly, the district court erred in granting a directed verdict of invalidity.
 
 III.
 
 14
 A. The district court based its direction of a verdict of noninfringement on two grounds. First, the court reasoned from the specification that the "essence of the invention" was a flexible-use vehicle with light-weight components, so that without a weight limitation in the claims, the patent would be indefinite for failing to claim the invention. Because the claim itself contained no express weight limitation the court considered it necessary, to save the claim's validity, to interpret the language of the preamble of claim 1, "personal mobility" vehicle, to mean a vehicle having components of 30 pounds or less. This 30 pound limitation was based on language appearing in the patent's abstract and summary of the invention. Because the accused devices do not have such component weights, the district court directed a verdict of noninfringement. On appeal Burke contends that the court erred in construing the preamble of the claim to require a specific weight limitation.
 
 
 15
 Determining whether a patent is infringed involves two inquiries: (1) interpreting the claims; and (2) comparing the properly interpreted claims to the accused products. Read Corp., 970 F.2d at 821, 23 USPQ2d at 1431. Claim interpretation is a question of law for the district court and for this court on appeal. See id. at 822-23, 23 USPQ2d at 1432. On the other hand, the comparison of the properly interpreted claim to the accused product is performed as a matter of fact. Lemelson v. United States, 752 F.2d 1538, 1547, 224 USPQ 526, 530 (Fed.Cir.1985).
 
 
 16
 The district court legally erred when it attempted to ascertain from the specification what it perceived to be the "inventive essence," then limiting the claim through the preamble to that perceived essence. Cf. Raytheon Co. v. Roper Corp., 724 F.2d 951, 957, 220 USPQ 592, 597 (Fed.Cir.1983) (rejecting the argument that the "essence" of the invention must be read into all the claims). That kind of analysis would leave courts largely unconstrained in defining, and the public uncertain as to the scope of, the patented invention for infringement purposes.
 
 
 17
 Based on this faulty analysis the court improperly read the weight references in the specification into the claim (here, through the preamble) as a limitation on its scope. See SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1121, 227 USPQ 577, 585 (Fed.Cir.1985) (in banc). There is still an issue as to whether the preamble words, "personal mobility vehicle," themselves constitute "structural limitations of [the] claim," or merely state "a purpose or intended use for the claimed structure." Corning Glass Works v. Sumitomo Electric U.S.A., Inc., 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966 (Fed.Cir.1989). At this stage of the litigation, we are not convinced that the preamble is other than a statement of purpose and use.
 
 
 18
 The expressly claimed structural elements--modular, separable components--may reasonably define a "personal mobility" vehicle, a term which the inventor asserts that he coined. And the references in the abstract and summary of the invention to the maximum weight of the various components of the invention may reasonably be viewed as stating a desirable characteristic of these components, particularly in light of the prosecution history. In pursuing his patent in the Patent and Trademark Office, Kramer stated: "As described in the specification, it is desirable for the component units of the vehicle to each weigh less than thirty pounds." (Emphasis added.) The preamble's general description of the invention as a "personal mobility vehicle" has not been shown to be a structural limitation as to component weight. See Intel Corp. v. United States Int'l Trade Comm'n, 946 F.2d 821, 836, 20 USPQ2d 1161, 1174 (Fed.Cir.1991).
 
 
 19
 Because the district court's analysis was faulty, and because at this stage of the litigation the claim reasonably may be construed as having no weight limitation, we are persuaded that the district court erred in directing a verdict of no infringement based on a perceived component weight limitation of 30 pounds.
 
 
 20
 B. The district court also directed a verdict of no infringement by construing the language of paragraph (d) of claim 1 as containing a one-battery limitation. That language reads: "A personal mobility vehicle comprising ... (d) a battery unit including a battery member...." Because the accused devices do not infringe the patent if claim 1 has the one-battery limitation, the district court rendered judgment of noninfringement as a matter of law. On appeal Burke contends that the court erred in construing paragraph (d) of claim 1 as so limited.
 
 
 21
 As a general rule, "comprising" and "including" are open-ended terms which cover the structural elements recited plus additional elements. See 2 D.Chisum, Patents § 8.06 (1992). To ascertain the intended meaning of claim language, the court may, among other things, look to the patent prosecution history. Read Corp., 970 F.2d at 823, 23 USPQ2d at 1432. The prosecution history before us does not indicate that the claim words "comprising ... a battery unit including a battery member" should be construed narrowly to exclude additional elements. Although Kramer noted during prosecution that the cited Voyager VI reference has two electric motors and two batteries, he distinguished Voyager VI because it lacked a modular frame as well as other features of his claimed invention. In view of the subsequent amendments to the claims, the number of batteries apparently had no relevancy to patentability of Kramer's invention. Thus, at the directed verdict stage of litigation, it was improper for the district court as a matter of law to limit the broad language of the claim to require a single battery based on prosecution history which at best was inconclusive.
 
 IV.
 
 22
 Accordingly, the judgment based on the directed verdict of invalidity and noninfringement is vacated and the case is remanded for trial.[6]
 
 COSTS
 
 23
 Costs are awarded to Burke.
 
 
 
 [1]
 In view of our disposition we do not consider the cross-appeals of E & J and Invacare from the court's order denying attorney fees and from the court's order denying summary judgment on matters distinct from the appealed from judgment, see 28 U.S.C. § 1291 (1988); Jones v. United States, 466 F.2d 131, 136 & n. 3 (10th Cir.1972); Dutton v. Cities Serv. Defense Corp., 197 F.2d 458, 458-59 (8th Cir.1952). Burke's request for sanctions under Federal Rule of Appellate Procedure 38 against E & J and Invacare for frivolous cross-appeals is denied. In their briefs, E & J and Invacare also requested sanctions against Burke for a frivolous appeal but withdrew their request at oral argument
 
 
 [2]
 The motion was made under Federal Rule of Civil Procedure 50(a) before "directed verdict" was renamed "judgment as a matter of law."
 
 
 [3]
 Burke's motion for reconsideration was denied. In re Burke, Inc., 786 F.Supp. 1537, 22 USPQ2d 1368 (C.D.Cal.1992)
 
 
 [4]
 Claim 1 reads:
 A personal mobility vehicle comprising:
 (a) a main frame unit including:
 (1) a floor pan having a back end;
 (2) a front wheel spindle pivotally connected to said pan[;]
 (3) a front ground engaging wheel rotatably mounted on said spindle; and
 (4) a steering tiller connected to said spindle;
 (b) a rear drive unit including:
 (1) a drive unit frame;
 (2) a rear axle means rotatably mounted on said drive unit frame;
 (3) a pair of spaced apart ground engaging rear wheels mounted on said rear axle means in spaced apart relation;
 (4) a motor mounted on said frame;
 (5) transmission means drivingly connecting said motor to said rear axle means; and
 (6) frame connection means removably connecting said drive unit frame to said floor pan of said main frame unit with said floor pan back end adjacent said rear wheels;
 (c) a seat unit including a seat member, said seat unit being connected to said floor pan of said main frame unit in proximity to said floor pan back end with said seat member in spaced relation to said pan;
 (d) a battery unit including a battery member, said battery unit being removably positioned on said floor pan of said main frame unit in proximity to said back end thereof; and
 (e) control means removably interconnecting said battery member with said motor to selectively operate said motor to propel said vehicle.
 (Emphasis added.)
 
 
 [5]
 Contrast this with In re Certain Convertible Rowing Exercisers, Inv. No. 337-TA-212, USITC Pub. No. 2111, (available on Westlaw, ITC database) 1988 ITC LEXIS 68, at (Aug. 1988), in which the United States International Trade Commission viewed as definite the plain meaning of "removably coupled" derived from Webster's New Collegiate Dictionary: joined in such a manner as to be readily separable
 
 
 [6]
 In reversing the directed verdict for E & J and Invacare, we do not decide that Burke is entitled to judgment as a matter of law, nor that E & J and Invacare are in futuro precluded from judgment as a matter of law. We decide only that at this stage of the litigation, on the record developed thus far, E & J and Invacare have not demonstrated that they are entitled to judgment as a matter of law