14073

STEVENSON v. B. B. KIRKLAND SEED CO.

(180 S. E., 197)

*Messrs. Melton & Belser,* for appellant,

*Messrs. Elliott, McLain, Wardlow & Elliott,* for respondent,

May 27, 1935.

The opinion of the Court was delivered by MR. PHILIP H. STOLL, ACTING ASSOCIATE JUSTICE.

The complaint in this action alleged in substance that Edna S. Stevenson, the respondent herein, was engaged in the maintenance and operation of the Fairwold Dairy Farm and that on said farm she had a herd of approximately 129 animals; that on or about September 20, 1933, she bought

from the B. B. Kirkland Seed Company, the appellant herein, 175 bushels of rye seed, which rye seed the appellant represented to be Abruzzi rye; that respondent particularly specified Abruzzi rye to appellant as the kind which she desired to purchase for the reason that the growth development of that variety of rye produces a continuous upright growth which animals can continually graze during the growing season and which is highly recommended by experts and dairymen, and is a well-known food for dairy herds and greatly increases the milk production; that respondent bought the said rye seed from appellant upon the express representation and warranty made by the appellant that the seed so sold and delivered was genuine Abruzzi rye, and paid the appellant on the day the seed was delivered the quoted price for genuine Abruzzi rye seed, which was $1.55 per bushel or the total sum of $271.25; that respondent prepared her land in the proper season for planting Abruzzi rye, made the necessary preparation in a thoroughly farmerlike manner, and planted approximately 115 acres of land with the seed purchased from the appellant, which was sufficient to pasture her dairy herd for approximately six months had the rye seed so purchased been Abruzzi rye as represented to her by appellant; that after the planted rye had obtained sufficient growth to distinguish its variety, it developed that it was not Abruzzi rye, but was another variety of rye of a flat spreading growth and wholly unsuitable and useless for grazing and pasturing her dairy herd; that as a result thereof her land was wasted for the season for grazing purposes and she was put to great expense to buy concentrated food for dairy herd, and her milk production was decreased approximately twenty gallons per day.

The complaint further alleged that the appellant sold respondent the said 175 bushels of rye seed under an express warranty that same was genuine Abruzzi rye, that said warranty was breached by appellant, and the breach

thereof accompanied by acts of fraud, thereby damaging respondent in the sum of $10,000.00.

The answer of appellant contained first a general denial; second, a plea that the rye was sold under a nonwarranty or disclaimer clause by which the appellant was relieved from any responsibility for the crop produced; and, thirdly, a counterclaim in the sum of $410.00 on account of a past-due account alleged to be due and owing by respondent to the appellant.

To appellant's counterclaim the respondent filed a general denial.

The case was tried before Judge W. H. Townsend and a jury in the Court of Common Pleas for Richland County on May 23, 1934. At the opening of the trial, upon motion of the appellant that the respondent be required to elect the cause of action upon which she would go to trial, the appellant elected to treat the complaint as stating a cause of action for fraudulent breach of contract accompanied by a fraudulent act.

During the trial the respondent sought to prove her case by offering evidence as to the kind of crop which was produced from the seed secured by her from the appellant. The appellant objected to this evidence, but objections were overruled.

At the conclusion of respondent's evidence, the appellant moved for a nonsuit upon the ground that the evidence offered failed to sustain the allegations of the complaint, which motion was overruled. When all the evidence was in, the appellant made a motion for a directed verdict upon similar grounds, which motion was likewise overruled. Respondent's motion for a directed verdict as to appellant's counterclaim was granted. The jury returned a verdict for respondent on the complaint in the sum of $1,090.45, actual damages.

Thereafter, the appellant made a motion for a new trial upon the ground generally that the verdict was contrary to

the law and evidence, and also that one of the jurors was not qualified. This motion was also refused by the trial Judge.

The case is now before this Court upon exceptions which challenge particularly the rulings of the trial Court in the admission of evidence, in refusing appellant's motion for a nonsuit, and for a directed verdict and for a new trial, and in granting respondent's motion for a directed verdict of appellant's counterclaim.

For a proper understanding of the case, certain pertinent facts must be stated. Mrs. Edna S. Stevenson, the respondent, was lessee of Fairwold Dairy Farms under a written lease bearing date September 18, 1933. The rye seed, around which this action is centered, was bought by her from the B. B. Kirkland Seed Company on September 22, 1933, and on September 27, 1933, Mrs. Stevenson gave her check for $271.25 in payment for same. When Mrs. Stevenson bought from appellant, she stated that she wanted Abruzzi rye seed and the seed sold her were represented by appellant to be Abruzzi rye, and the invoice of the sale stipulated that it was Abruzzi rye. The invoice contained a nonwarranty clause to the effect that no warranty, express or implied, was given as to description, quality, productiveness, or any other matter of any seeds, bulbs, or plants by the seller, and that it would not be in any way responsible for the crop, and if the goods were not acceptable to purchaser on such terms, goods were to be returned at once. Abruzzi rye is a distinct variety and is especially adapted to the climate of this State and is the most suitable of all varieties for grazing cattle. Prior to the taking over of Fairwold Dairy Farms by respondent as lessee, said dairy farm was operated by L. B. Stevenson, respondent's husband.

The appellant states the questions raised by its exceptions to be as follows:

"1. That the evidence conclusively showed that the appellant had bought and sold the rye seed believing the same

to be Abruzzi rye seed, and that the sale was made under a non-warranty clause and custom absolving the seller from responsibility for the crop produced, and hence the motion for a non-suit and for a directed verdict should have been granted.

"2. That the Court should have ruled out the respondent's evidence as to the representations alleged to have been made by appellant as to the place where the rye seed were bought and grown since no such allegation was contained in the complaint.

"3. That the Court misstated the issue by saying that the sole issue was whether the rye was abruzzi rye since the case really turned upon the belief of the respondent.

"4. That the Court should have charged the jury that it was impossible to hold the appellant liable by opinion evidence as to the variety of the rye produced from the seed sold.

"5. That the motion for a new trial should have been granted because the verdict was contrary to the law and the evidence.

"6. That the motion for a new trial should have been granted because one of the jurors was disqualified.

"7. That the Court erred in granting a directed verdict in favor of the respondent on the appellant's counterclaim on the admitted indebtedness of Fairwold Dairy.

"8. That the Court erred in settling the transcript of record in requiring the printing of the entire stenographer's report of the proceedings."

To properly answer these questions, it is necessary to first determine what cause of action was stated in respondent's complaint. At the opening of the trial, the respondent elected, upon motion of appellant requiring an election, to treat the complaint as stating a cause of action for fraudulent breach of contract accompanied by a fraudulent act. In the case of *Mauldin et al. v. Milford*, 127 S. C., 508, 121 S. E., 547, 552, Justice Marion, speak-

ing for the Court and citing *Randolph & Co. v. Walker,* 78 S. C., 157, 59 S. E., 856, said: "Where the complaint contains allegations appropriate to an action upon contract and also to an action in tort, and such allegations are not separately stated as distinct causes of action, certainly, in the absence of an election by plaintiff 'every intendment is in favor of regarding the action *ex contractu.'*" Should there be a doubt as to what cause of action the complaint stated, such doubt was eliminated when the respondent elected to proceed to trial on an action *ex contractu.* The rule in this State is well settled that in an action for breach of contract actual damages may be recovered to the extent of such damage as naturally, directly, and proximately results therefrom, and that where the breach of the contract is accompanied by a fraudulent act, then punitive as well as actual damages may be recovered. *Sitton v. McDonald,* 25 S. C., 68, 60 Am. Rep., 484; *Welborn v. Dixon,* 70 S. C., 108, 49 S. E., 232, 3 Ann. Cas., 407; *Holland v. Herald-Journal Co.,* 166 S. C., 454, 165 S. E., 203, 84 A. L. R., 1336.

The case was properly tried as an action *ex contractu,* and the evidence discloses that it related primarily to whether or not there was a warranty in the sales contract and if same was breached by the seller. A warranty is a statement or representation made by the seller of goods, contemporaneously with and as part of the contract of sale, having reference to the character, quality, kind, variety, or title of the goods. A warranty is *express* when the seller makes an affirmation with respect to the article to be sold, pending the contract of sale, upon which it is intended that the buyer shall rely in making the purchase. A warranty is *implied* when the law derives it by implication or inference from the nature of the transaction. In order for an *express* warranty to exist, there must be something positive and unequivocal concerning the thing sold, which the vendee relies upon, and which is understood

by the parties, as an absolute assertion concerning the thing sold, and not the mere expression of an opinion; representations which merely express the vendor's opinion, belief, judgment, or estimate do not constitute a warranty. It is not always easy to determine whether certain language does or does not amount to a warranty. The language used is sufficient to constitute an express warranty if the words used import an undertaking that the property is what it is represented to be, or an equivalent to such undertaking. 55 C. J., 673.

It is proper here to observe the distinction between a cause of action for a breach of warranty and a cause of action for misrepresentations and deceit. In the case of a warranty, the rights of the purchaser rest in contract, while in the case of deceit, misrepresentations, and fraud, they are based on tort.

In the· case of *Poag v. Charlotte Oil & Fertilizer Co.,* 61 S. C., 190, 39 S. E., 345, 346, Justice Pope, quoting from 14 Am. & Eng. Enc. Law, pages 86-88, states the rule as follows: "A fraudulent intent in the case of a false representation includes knowledge that the representation is false, or what is called a 'scienter.' * * * As a general rule, an action of deceit cannot be maintained if a false representation is made in the honest belief that it is true. In the requirement of a scienter, *deceit differs from a breach of warranty.* If a representation amounts to a warrant, an action of assumpsit for a breach of warranty, or an action on the case for a false warranty, express or implied, may be maintained, *whether the defendant knew the representation was false or not."* (Italics added.)

The instant case is not an action in tort for deceit and false representation, but is one for a breach of an express warranty, and, as such, the only questions to be determined were whether or not in the transaction between appellant and respondent relating to the sale and purchase of the Abruzzi rye seed there was a breach of an express warranty

on the part of the appellant, and, if there were such a breach, the resulting damages, if any, sustained by respondent.

Did the appellant contract with respondent to sell her genuine Abruzzi rye seed? The answer admits that appellant sold respondent rye seed it then believed and still believes to be Abruzzi rye seed. Did appellant perform its contract by delivering to respondent genuine Abruzzi rye seed? The complaint alleges an express warranty in that appellant warranted the seed sold to respondent was an express variety. The evidence on this question was conflicting, the respondent's tending to show that it was not Abruzzi rye and appellant's tending to show that it was. The conflicting evidence, therefore, made an issue of fact for the jury on two questions, namely, (1) whether or not respondent applied for and received rye seed represented to her to be Abruzzi rye seed, and (2) if so, whether the rye seed delivered to her by appellant was in fact Abruzzi rye.

The appellant contends that the evidence conclusively shows that it bought and sold the rye in question as Abruzzi rye, believing it to be Abruzzi rye, and therefore, could not be held responsible for the variety of the crop produced, and relies on the case of *Black v. B. B. Kirkland Seed Co.,* 158 S. C., 112, 155 S. E., 268, 269. In the *Black case* Justice Blease speaking for the Court said: "There was only one cause of action stated, namely, breach of an express warrant. * * * The only questions that should have been submitted to the jury were: (1) Whether or not plaintiff applied for, and received rye represented to be, Abruzzi rye; and (2) if so, whether the rye delivered was in fact Abruzzi rye. So much of the charge to the jury as related to implied warranty could only tend to confuse and mislead the jury."

The appellant further contends that the evidence conclusively shows that the sale was made under a nonwarranty clause and custom providing that the seller gave no warranty

as to the seed and would not be responsible for the crop, and again relies on the *Black case*. Again, we quote from the *Black case:*

"It is clear that in the absence of an express warranty, the law will imply a warranty of soundness where a sound price is paid. But the parties are at liberty to make a special contract, in which event they are bound by their contract. The seller is not bound to warrant any article that he sells, and he has the right to limit the warranty given as he sees fit in any manner and to any extent acceptable to the purchaser.

"Under our view, the nonwarranty clause printed in appellant's catalogue, on its invoice sheets, and on cards inserted in its seed bags is immaterial. For such a clause to be applicable in any case, it must be shown that it was brought to the attention of the purchaser. But in this case it could have no application, since the pertinent and only question is whether or not the rye in question was Abruzzi rye."

Appellant earnestly contends that the evidence in the case conclusively shows that it bought and sold the rye seed in question believing it to be Abruzzi rye, and that if appellant bought it believing it to be Abruzzi rye and it afterwards turned out not to be, then no liability could attach to appellant.

The general rule appears to be that the sale of seed as and for a certain kind constitutes a warranty of the seed. In some jurisdictions it is treated as an express warranty, and in some as an implied warranty, while in others it is not regarded as a warranty but as a condition, the breach of which gives rise to an action in the nature of a breach of warranty. If seed is sold for planting purposes and represented by seller to be of a certain name and variety, and it is so bought, there is an express warranty on the part of the seller. *Rauth v. Southwest Warehouse Co.*, 158 Cal., 54, 109 P., 839. In the *Rauth case, supra,* it was held that where

barley was sold for seed purposes as being of a certain kind, and a partial failure of the crop from such seed results from the fact that it is of a different kind, the seller is liable for the damages as for a breach of warranty. In *Wolcott v. Mount,* 38 N. J. Law, 496, 20 Am. Rep., 525, it was held that a sale of turnip seed as and for "early strap-leaf red-top turnip seed" constituted a warranty that the seed was of that kind. In *Vaughan's Seed Store v. Stringfellow,* 56 Fla., 708, 48 So., 410, it was held that a sale of seed for seed purposes as and for "Arlington White spine cucumber seed" constituted a warranty that the seed would produce that kind of cucumber. In *Van Wyck v. Allen,* 69 N. Y., 61, 25 Am. Rep., 136, it was held that selling seed for sowing or planting purposes as being a particular kind of seed constitutes a warranty that it is true to name, which is breached by delivering seed of a different kind, utterly unproductive.

South Carolina has recognized this principle for more than one hundred years. In *Barnard v. Yates,* 1 Nott & McC., 142, Justice Gantt said: "He who has sold one thing for another, whether he was ignorant of the defect or conscious of it, is bound to take back the thing or to abate the price, and to *make good the damages which the buyer shall have suffered.*" (Italics added.)

Again, the rule of *caveat emptor* does not apply in this State. To hold that the sale of the Abruzzi rye seed by appellant to the respondent in the instant case did not carry with it a warranty would be to apply the rule of *caveat emptor.* In the case of *Sanders v. D. Landreth Seed Co.,* 100 S. C., 389, 84 S. E., 880, it was held that the buyer of seed potatoes could recover on an implied contract of warranty such actual damages as was sustained because of inferiority of potatoes, on the principle that a sound price warrants a sound article. Certainly if damages may be recovered on an implied warranty, it may also be recovered on an express warranty. The only means of escape from an

express warranty or in the absence of an express warranty an implied warranty, is by special contract. In this case the appellant relies upon the clause in the invoice relative to a warranty, either express or implied. The rule in this State is that for such clause to be applicable in any case it must be shown that it was brought to the attention of the purchaser. *Black v. B. B. Kirkland Seed Co.*, 158 S. C., 112, 117, 155 S. E., 268; *Sanders v. D. Landreth Seed Co., supra*. It does not appear that this was done.

All of appellant's exceptions are predicated on the theory that this case was an action in tort. As already pointed out, the action was on contract for a breach of an express warranty and the primary questions for determination were whether or not appellant warranted the seed to be Abruzzi rye, and whether or not the seed sold respondent was Abruzzi rye. The respondent's contention was that it was not Abruzzi rye, and, in order to so prove, offered testimony as to the crop the seed produced. The seed had been planted and could not be offered in evidence. Respondent claims that she planted the seed on the warranty of appellant that it was Abruzzi rye. She expected Abruzzi rye to be produced from the seed. She offered testimony that the crop produced from the seed was not Abruzzi rye. This testimony certainly related to the question that was in issue and was, therefore, clearly relevant. The testimony was from witnesses who were qualified to give an opinion on Abruzzi rye and was therefore competent. We see no error in admitting evidence as to the kind of crop produced.

Exception 8 is without merit. The testimony which this exception complains of as immaterial and irresponsive to the complaint was received without objection on the part of the appellant. Respondent was seeking punitive damages on allegations in her complaint that the appellant had intentionally misrepresented the variety of seed and this testimony was competent for that purpose. Appellant's request to charge did not properly state the

issue. The jury did not find punitive damages, which fact makes the question raised by this exception academic. From no viewpoint can it be said that appellant has been prejudiced by the admission of the testimony or the trial Judge's refusal to charge as requested.

Appellant also complains of error on the part of the trial Judge in granting respondent's motion for a direct verdict as to appellant's counterclaim. The record fails to disclose any testimony that tends to show that the respondent had anything to do with the debt contracted by her husband two years prior to the time she took over Fairwold Dairy as lessee. The testimony shows that the debt, which was the subject of appellant's counterclaim, was contracted by her husband, Mr. Stevenson, when he was lessee of Fairwold Dairy, that it ran a while as an open account, and at the trial was evidenced by a promissory note made by Mr. Stevenson. It appears that "Fairwold Dairies" had long been a trade-name for the operator of the dairy whether by owner or lessee. Mrs. Stevenson, the respondent, paid for the Abruzzi rye with her check at the time of the delivery. Mrs. Stevenson could not be charged with the debt of her husband and the trial Judge very properly directed a verdict for her on appellant's counterclaim.

After the trial and rendition of the verdict, appellant made a motion for a new trial on the ground that one of the jurors was not a resident of Richland County, but was a resident of Lexington County, and, therefore, not qualified. This motion was based upon an affidavit of B. B. Kirkland, Jr., president of B. B. Kirkland Seed Company, to the effect that shortly after the trial a bailiff of the Court told him that J. H. Summers, one of the jurors, was not a resident of Richland County, but was a resident of Lexington County; that later he talked with Mr. Summers who gave him a written statement to the effect that he was not then a resident of Richland County and had not been since February 20, 1933. The statement of Mr.

Summers was not sworn to. In passing upon this motion, the trial Judge said: "In this statement, Mr. Summers further says that when he was drawn and summoned to serve at the present term of Court that he made the statement in the Sheriff's office that he was not a resident of Richland County any longer, but was instructed to serve anyway. He does not state who gave him these instructions or to whom he disclosed the fact of his nonresidence. Residence is a mixed question of law and fact and the juror may or may not be correct in the statement which he now makes. However, his bare statement is not conclusive of the matter and counsel for the defendant states that they relied upon the name of Mr. Summers being on the jury list, certified to by the jury commissioners and returned by the Sheriff, with the address, Columbia, Route No. 2, with the letters written after his name 'S. L.,' which is certified to by the Sheriff to mean 'Summons left' at his place of abode There is no further evidence as to the residence of this juror. And as a matter of fact, he answers the Writ of Venire, by appearing in answer to the summons and serves on the jury without objection. Counsel for defendant says that he assumed that he was a resident of the county because of the statement upon the Writ of Venire, which I referred to. Counsel for the defendant says, he relied upon his inspection of the writ in the office of the Clerk of Court, and made no further inquiry before trial as to the residence of the juror, Summers, and had no notice that Summers had ever changed his residence from Richland County to Lexington County. A change of residence involves a question of intention, as well as a question of fact and if counsel had desired to question the evidence stated in the Writ of Venire, as to the residence of the juror, he could have done it by having the juror sworn and examined upon his *voir dire* in open Court. The State requires all objections to jurors to be made before they are impanelled upon the case. If the objection is such as could have been ascertained in the

exercise of due diligence, I think the objection here made to the juror could have been so ascertained had counsel requested his examination upon his *voir dire,* and the matter determined before he was taken upon the jury. Waiting to ascertain the facts, and making the objection after verdict rendered would tend to render verdicts uncertain and not be in furtherance of justice. I don't think that the objection now made to the nonresidence of this juror should be sustained and it is thereby refused."

In the case of *State v. Gregory,* 171 S. C., 535, 172 S. E., 692, 695, this Court said: "Under numerous decisions of this Court, so very many that it is useless to cite them (see annotation under Section 639 of the Code), a party, in his trial, who fails to exercise due diligence in discovering the disqualification of a juror, before the empaneling of the jury, cannot, after the rendition of a verdict adverse to him, rightly ask the Court to disturb that verdict. This Court, time after time, has disapproved the quiet sitting of a party, with information already obtained, or which could be easily obtained, as to the disqualification of a juror, taking his chances, ready to acquiesce in a favorable verdict, and more ready to move the setting aside of an unfavorable one. The provisions of Section 639 of the Code say that objections to jurors, not taken before the jury is empaneled, 'shall be deemed waived; and if made thereafter shall be of none effect.' The Court has construed the language of the section to mean such objections of which the party had knowledge, or which by the exercise of due diligence he could have known."

Whether a new trial should be granted on such a motion as the one under consideration is addressed to the sound discretion of the Circuit Judge. We find no abuse of discretion in the ruling of the trial Judge.

The appellant also is dissatisfied with the order of Judge Mann, who as presiding Judge in the Fifth Circuit settled the transcript of record for appeal. It ap-

pears that the trial Judge read to the jury the entire complaint, and Judge Mann's order settling the case required the printing of the entire charge except such portions at the end of the charge which instructed as to the form of the verdict. Beginning at page 4 of the transcript of record, the complaint is printed in full with the result that the complaint appears twice in the transcript of record. That portion of the Judge's charge to the jury where he read the complaint could properly have been omitted. In no other respect do we find error in Judge Mann's order. Respondent should be required to pay for the printing of folios 851-861, inclusive.

After careful consideration of the entire case and all questions raised by the exceptions, it is the judgment of this Court that the judgment of the Circuit Court be affirmed, and that the order of Judge Mann be modified in conformity with this opinion, and that respondent be required to pay for the printing of folios 851 to 861, inclusive, of the transcript of record.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER and BONHAM concur.