**HOGG'S OYSTER COMPANY, INC., Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 81–2104.**

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1982.

Decided April 29, 1982.

Kristina E. Harrigan, Tax Division, Dept. of Justice, Washington, D. C. (Elsie L. Munsell, U. S. Atty., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Daniel F. Ross, Tax Division, Dept. of Justice, Washington, D. C., on brief), for appellant.

W. Dean Short, Newport News, Va. (Short, Short, Telstad, Kerr & Hudgins, P. C., Newport News, Va., on brief), for appellee.

Before BUTZNER and SPROUSE, Circuit Judges, and POTTER,* District Judge.

SPROUSE, Circuit Judge:

 The United States appeals from the judgment of the district court refunding $14,361.61 of taxes on accumulated earnings, and interest thereon, to Hogg's Oyster Company, Inc. (Taxpayer). The government contends that the district court erroneously instructed the jury regarding proof of the necessary specificity, definiteness and feasibility of a plan for future expenditures which would justify a nontaxable accumulation of earnings and profits for reasonably anticipated future needs. Although we disapprove of parts of the instructions, we affirm, since the instructions as a whole adequately informed the jury of the applicable standard to be applied to the evidence.

The facts are undisputed. Taxpayer is a small family corporation whose president and principal officer during the tax years in issue, C. Wyndham Hogg, was deceased at the time of trial. Taxpayer operated an oyster packing plant on Gloucester Point, in Gloucester County, Virginia. The property was leased from the County Board of Supervisors (Board) for 10-year periods, the last ending in 1975.[1] In 1972, Mr. Hogg became concerned that the lease would not be renewed for a similarly long term due to the desire of the Board to convert surrounding lands from commercial to recreational uses. In March 1972 Taxpayer's board of directors acknowledged the probability of the lease termination and resolved "to find and secure a parcel of land in Gloucester County suitable for the present operation of the corporation's business to be used in the event that the Board of Supervisors of Gloucester County declines to renew the present lease when it expires in May of 1975." Thereafter, the authorized capital stock of the corporation was increased to finance the contemplated move. There were no more detailed plans, written or otherwise, for a specific location, but there was evidence that Taxpayer's deceased president had consulted an attorney about the cost of replacing the land and equipment, and considered two prospective locations.

Taxpayer timely filed federal income tax returns for its tax years ending March 31, 1975, and March 31, 1976. As a result of an audit, the Commissioner determined a deficiency of taxes on accumulated earnings of $6,422.56 and $7,939.05 for fiscal years 1975 and 1976, respectively. The Taxpayer paid the assessment and filed a claim for a refund. After the District Director disallowed the claim, Taxpayer filed this action in district court.

The provisions governing accumulated earnings tax are set out in sections 531–537 of the Internal Revenue Code of 1954. I.R.C. § 531 provides for the imposition of an accumulated earnings tax on the accu-

---

* Hon. Robert D. Potter, United States District Judge for the Western District of North Carolina, sitting by designation.

1. The lease was renewed for one-year periods from 1975 to 1979, when Taxpayer declined to renew its lease.

mulated taxable income of a corporation. Section 532(a) provides that this tax "shall apply to every corporation formed or availed of for the purpose of avoiding the income tax with respect to its shareholders ... by permitting earnings and profits to accumulate instead of being divided or distributed." Section 533(a) provides that:

> For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary.

Section 537 provides in part that the term "reasonable needs of the business" includes the reasonably anticipated needs of the business.

The Commissioner contends that the jury did not properly consider the evidence because the instructions did not accurately state the correct legal standard applicable for determining whether Taxpayer accumulated earnings for the "reasonably anticipated needs of the business."

In *Bahan Textile Machinery Company, Inc. v. United States*, 453 F.2d 1100 (4th Cir. 1972), we held that in order for accumulations to be justified on the grounds of reasonably anticipated needs of the business, the corporation must have specific, definite and feasible plans for the use of such accumulations.[2]

The district court in the case *sub judice* instructed the jury in part:

> In order to justify an accumulation of earnings and profits for the reasonably anticipated future needs of a business, a corporation must have had specific, definite and feasible plans at the close of each of the years in issue for use of the earnings retained in the business. However, where the future needs are reasonable and foreseeable, but incapable of definiteness, and where specific plans cannot be made for these needs, other than to conserve a reasonable amount of capital, specific, definite and feasible plans are not so required. With respect to these needs, it is only necessary that they be reasonably foreseeable.

On the other hand, in considering those needs which were capable of specific determination and definite planning, you must find in determining whether Hogg Oyster Company had a specific, definite and feasible plan at the close of each of the years in issue for use of the accumulated earnings and profits for such needs that the plan must be specific as to what is to be done, with the intent to do so, that is the plan must be more than a nebulous desire to meet the problems or requirements of the business. In addition, the plans must be coupled with some action, some contemporaneous course of conduct, directed towards the claimed objective. However, a closely-held corporation is not held to the same strict formalities as a large publicly-held corporation. The fact that Hogg Oyster Company did not have formal written plans or include references in all of its corporate minutes to all of its business needs does not preclude you from finding from the evidence that its retained earnings for such purposes were reasonable if you find that the contingencies were real, continuously present, and in the exercise of sound busi-

---

2. The court cited section 1.537–1(b) of the Treasury Regulations, which provides in part:

> In order for a corporation to justify an accumulation of earnings and profits for reasonably anticipated future needs, there must be an indication that the future needs of the business require such accumulation, and the corporation must have specific, definite, and feasible plans for the use of such accumulation. Such an accumulation need not be used immediately, nor must the plans for its use be consummated within a short period

after the close of the taxable year, provided that such accumulation will be used within a reasonable time depending upon all the facts and circumstances relating to the future needs of the business. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite, and feasible, or where the execution of such a plan is postponed indefinitely, an accumulation cannot be justified on the grounds of reasonably anticipated needs of the business.

ness judgment could not be ignored at the close of each of the years in issue.

The instruction by the court is, therefore, correct except to the extent that it indicates that a closely-held corporation is judged by a different standard than a publicly-held corporation[3] and to the extent that it indicates that the requirements for the existence of a plan for the use of the retained capital is met by conserving capital pursuant to indefinite, subjectively determined foreseeable needs.[4]

■ We disapprove these portions of the court's instructions. First, a closely-held corporation is held to the same general standard as a publicly-held corporation. A small corporation often may pursue its goals to realize future anticipated needs in a much more informal manner than a corporate giant. Proof of specificity of plans and actions would, for that reason, always vary, depending on the size and business formalities required by the nature of the taxpayer; the standard for determining if the business had qualifying plans for future needs, however, remains the same. The plan must be specific, definite, and feasible and some steps must have been taken towards its realization.

■ Absent specific plans and actions, a jury should not be permitted to find such specificity on the sole basis that the need is reasonably foreseeable. There is no requirement, of course, that to qualify for section 537 treatment, a taxpayer must have written plans, but the *Bahan* standard must be met. There must be a feasible plan, coupled with some action aimed at the fulfillment of the plan. This may be proved in numerous ways and the actions of

Taxpayer's president and board of directors was certainly sufficient evidence upon which the jury could have based its verdict. The probability of the termination of its lease in 1975 was concrete; the board of directors was informed of this and resolved to search for a new location; Taxpayer's president investigated the price and suitability of other potential locations; and it appears from the evidence that the efforts of Taxpayer's other officers in this regard were not contrived, but were sincere. There was, then, sufficient evidence upon which a jury could find that the Taxpayer met the *Bahan* standard in showing a reasonably anticipated future need and plans for the use of retained capital that justified the accumulation of earnings and profits.

Finally, although the trial court was partially erroneous in its instructions, it followed by advising the jury correctly:

In determining whether Hogg Oyster Company had specific, definite and feasible plans during the years in question for the use of its earnings, you should look to the corporation's intentions manifested at the time of the accumulation, not at subsequently declared intentions or actions which were merely the product of afterthought.

A plan for business purposes must be more than a nebulous desire to meet the problem or requirement of a business.

In order to justify an accumulation as reasonable to meet a business need, the need must be treated with economic reality. Mere recognition of the need is not enough. In other words, mere recognition of a future problem, with discussion of possible and alternative solutions, is

3. Specifically, the erroneous portion of the instructions on this point was:

However, a closely-held corporation is not held to the same strict formalities as a large publicly-held corporation. The fact that Hogg Oyster Company did not have formal written plans or include references in all of its corporate minutes to all of its business needs does not preclude you from finding from the evidence that its retained earnings for such purposes were reasonable if you find that *the contingencies were real, continuously present, and in the exercise of sound busi-*

ness judgment could not be ignored at the close of each of the years in issue.

4. The following language was erroneous:

However, where the future needs are reasonable and foreseeable, but incapable of definiteness, and where specific plans cannot be made for these needs, other than to conserve a reasonable amount of capital, specific, definite and feasible plans are not so required. With respect to these needs, it is only necessary that they be reasonably foreseeable.

not sufficient under the law. There must be substantial proof of a specific plan, objective and contingency which in the exercise of good business judgment demanded the accumulation of the earnings and the profits in a reasonable and reasonably definite manner.

 It is axiomatic that in considering errors in instructions, this court must look to the entire charge, and if the instructions, taken as a whole, fairly and adequately state the pertinent legal principles involved, then affirmance of the court below is required. *Chavis v. Finnlines Ltd., O/Y*, 576 F.2d 1072 (4th Cir. 1978). Since, therefore, the charge as a whole reveals that the jury was correctly instructed, and there was sufficient evidence to sustain the verdict, the judgment is affirmed.

AFFIRMED.