**SPARTANBURG COUNTY SCHOOL DISTRICT SEVEN, Appellant,**

v.

**NATIONAL GYPSUM COMPANY; United States Gypsum Company, Appellees.**

No. 85–2273.

United States Court of Appeals,
Fourth Circuit.

Argued July 15, 1986.

Decided Nov. 25, 1986.

Edward J. Westbrook, Jr., Barnwell, S.C. (Terry E. Richardson, Jr., Blatt & Fales, Barnwell, S.C., Daniel A. Speights, Hampton, S.C., on brief), for appellant.

Lawrence T. Hoyle, Jr., Philadelphia, Pa. (Hoyle, Morris & Kerr, Philadelphia, Pa., on brief), and Richard P. Brown, Jr., Philadelphia, Pa. (Frank L. Corrado, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., Patrick Michael Duffy, Michael A. Scardato, Morris, Duffy & Boone, Charleston, S.C., Edwin P. Martin, Steven W. Outzs, Turner, Padget, Graham & Laney, P.A., Columbia, S.C., Lively M. Wilson, Stites & Harbison, Louisville, Ky., on brief), for appellees.

Before HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Spartanburg County School District Seven appeals the judgment of the district court in its products liability action against National Gypsum Company and United States Gypsum Company in which a jury found no liability on the part of either company. Because of error in the charge to the jury, we vacate the judgment and remand the case for a new trial.

The school district sued to recover the cost of removing and replacing ceilings containing asbestos in five of its buildings constructed between 1955 and 1971. First

alerted to a potential problem by the state in 1979, the school district contacted a United States Gypsum official. He responded that the company's product, Audicote, contained a "minor amount" of asbestos but that there would be no hazardous exposure problem from a properly installed and maintained ceiling. Again in 1982 the school district became concerned and requested an inspection of its buildings by the South Carolina Department of Health and Environmental Control. Inspections revealed asbestos in five buildings, and, upon abatement recommendations, the school district replaced the ceilings.

Although it originally alleged numerous causes of action, the school district ultimately went to trial on only negligence and implied warranty of merchantability. The jury found for the companies in a general verdict on which the court entered judgment.

## I

The school district contends that the trial court erred by instructing the jury that the asbestos companies would not be liable for breach of implied warranty if, because of the state of the art, the companies could not have known of the defect in their product.[1] The asbestos companies assert that South Carolina law admits evidence concerning state of the art to defeat an action brought for breach of an implied warranty because of a design defect. They seek to support their position by drawing an analogy to an action based on strict liability in tort.

No South Carolina case, however, has allowed state of the art evidence to defeat a claim of breach of implied warranty. South Carolina has long adhered to the rule

that a sale for a fair and full price raises an implied warranty that the thing sold is free from defects, known or unknown to the seller. The Supreme Court of South Carolina, drawing on consistent precedent, explained the reason for holding a vendor liable on its implied warranties in *Lane v. Trenholm Building Co.*, 267 S.C. 497, 502–03, 229 S.E.2d 728, 730–31 (1976), as follows:

> When a product is sold, the parties contemplate an expected use of the product. One of the primary objectives of the law of contracts and sales is to carry out the reasonable expectations of the parties. To this end, the court in this State has consistently rejected *caveat emptor* and adopted the civil law rule of *caveat venditor* as part of the common law of South Carolina.
>
> *   *   *   *   *   *
>
> Under the rule of *caveat venditor*, a sale "raises an implied warranty (against latent defects) from the fairness and fullness of the price paid, upon this clear and reasonable ground, that in the contract of sale, the purchaser is not supposed to part with his money, but in expectation of an adequate advantage, or recompense." ... "Selling for a sound price raises an implied warranty that the thing sold is free from defects, known and unknown (to the seller)."
>
> *   *   *   *   *   *
>
> [The vendor's] liability is not founded upon fault, but because it has profited by receiving a fair price and, as between it and an innocent purchaser, the innocent purchaser should be protected from latent defects.[2]

Contrary to the asbestos companies' contention, *Claytor v. General Motors Corp.*,

---

1. Specifically, the school district objected to the italicized portion of the following charge:

   Under the law, if a manufacturer sells a product, by that sale he promises the buyer that the product is not defective and that it is fit for the purpose for which it is intended. A manufacturer breaches this warranty when it sells goods that are not fit for such use, such as when they present a hazard to users.

   *A manufacturer is not liable, however, if it did not know and because of the state of the*

art *could not have known of a defect in the* product. (italics added)

2. *Lane* involved a septic system, which, though designed for a high water table, did not function. The system was inspected and approved by the Veterans Administration and the county. The court recognized that their approval was a cogent reason for absolving the vendor. Nevertheless, it refused to allow this evidence to defeat an action for breach of the vendor's implied warranty. *See also Rutledge v. Dodenhoff*, 254

277 S.C. 259, 286 S.E.2d 129 (1982), *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192 (4th Cir.1982), and *Madden v. Cox*, 284 S.C. 574, 328 S.E.2d 108 (S.C.App.), *appeal dismissed*, 286 S.C. 127, 332 S.E.2d 102 (1985), do not sustain the trial court's charge. In *Claytor*, the proof established that a product was not defective, and, consequently, there could be no recovery under strict liability, warranty, or negligence theories of recovery. *See* 277 S.C. at 264–65, 286 S.E.2d at 132. *Claytor* does not stand for the proposition that state of the art evidence can absolve a vendor of liability for a defective product.

*Reed* allowed the state of the art defense in an action brought under South Carolina law solely upon the theory of strict liability in tort. *See* 697 F.2d at 1194, 1197. The case does not hold that the state of the art is relevant in actions brought for breach of warranty under South Carolina law.

*Madden* allowed recovery for a defectively designed mechanism in an action that alleged negligence, breach of warranty, and strict liability in tort. *See* 284 S.C. at 577–80, 328 S.E.2d at 111–13. A state of the art defense apparently was not tendered, for the court does not discuss it in connection with any of the theories of recovery.

*Claytor, Reed,* and *Madden* do not expressly or by implication hold that South Carolina law equates strict liability in tort and breach of warranty with respect to the relevance of state of the art evidence. Any notion to the contrary is dispelled by *Schall v. Sturm, Ruger Co., Inc.*, 278 S.C. 646, 300 S.E.2d 735 (1983). In that case the Supreme Court of South Carolina held that a statute creating a cause of action for strict liability in tort could not be applied retroactively. Explaining the rationale of its decision, the Court emphasized that strict liability in tort was different from breach of warranty, which deals with rights and duties framed by a transaction between the parties. 278 S.C. at 648, 300 S.E.2d at 736.

■ We conclude that the South Carolina Supreme Court would rule that a manufacturer who sells a defectively designed, dangerous product cannot escape liability for breach of implied warranty of merchantability by showing it could not have known of the defect because of the state of the art. The seller, whether he was ignorant of the defect or conscious of it, is bound to take back the thing or to abate the price, and to make good the damages which the buyer suffered. *Stevenson v. B.B. Kirkland Seed Co.*, 176 S.C. 345, 356, 180 S.E. 197, 201 (1935). By instructing the jury that evidence of the state of the art could exonerate the asbestos companies from liability for selling defectively designed products, the trial court erroneously introduced an element into an action for breach of an implied warranty that South Carolina has never accepted.

## II

In denying the school district's motion for a new trial, the district court reasoned that the error, if any, was harmless because the state of the art instruction was followed by a second statement of the law of implied warranty.[3]

■ This court must look to the entire charge and affirm the trial court if the instructions, taken as a whole, fairly and adequately state the pertinent legal principles involved. *Hoggs Oyster Co., Inc. v. United States*, 676 F.2d 1015, 1019 (4th Cir.1982). Although the second charge made no reference to the state of the art, we cannot find that the court adequately

S.C. 407, 175 S.E.2d 792 (1970) (vendor liable for breach of implied warranty for septic tank that was either defectively designed or defectively installed).

3. The instruction to which the judge referred was as follows:

The law implies warranties of merchantability and fitness for a particular purpose in the sale of goods, such as the asbestos-containing ceiling plaster sold by defendants. Those warranties are breached when a product is not fit for its intended use, regardless of whether the defect in the product was latent and unknown to the manufacturer, and even though the manufacturer may not have been negligent in failing to discover it.

stated the law of implied warranty. As this court recently noted, "[m]erely superimposing correct instructions over erroneous ones serves only to foster prejudice and confusion." *Griffin v. Martin,* 785 F.2d 1172, 1175 n. 11 (4th Cir.1986), quoting *State v. Peterson,* 287 S.C. 244, 248, 335 S.E.2d 800, 802 (1985). *See also Jamesbury Corp. v. Litton Industrial Products, Inc.,* 756 F.2d 1556, 1560 (Fed. Cir.1985) ("[A]n instruction that is defective because of a misstatement of the law is not cured simply by a correct statement appearing elsewhere.").

The erroneous instruction requires remand for a new trial. We find no cause for reversal in the school district's other assignments of error pertaining to the instructions and to evidentiary rulings. Many of the assignments are mooted by the grant of a new trial.[4] The school district shall recover its costs.

VACATED AND REMANDED.

K.K. HALL, Circuit Judge, dissenting:

I agree that the portion of the district court's jury instructions relating to "state of the art" knowledge was a misstatement of the South Carolina law of implied warranty. I cannot accept, however, the majority's conclusion that the error was of sufficient magnitude to require reversal of a judgment entered after an otherwise fair and full jury trial.

It is virtually hornbook law that the applicability of a harmless error standard to mistakes at trial is determined after an appellate examination of the record as a whole. In this instance the defective instruction related only to the school district's warranty claim. In a well-reasoned opinion denying the plaintiff's motion for a new trial, the district court observed that

the school district allotted less than one page of its pre-trial brief to the warranty claim while spending sixteen pages on its allegations of negligence.[1] The court also stated that it had instructed the jury on breach of warranty despite doubts as to whether the issue had been sufficiently developed to merit submission.

Furthermore, the district court concluded that the asbestos companies had based their trial defense not upon lack of knowledge, but, rather, upon lack of defect. The companies presented evidence which, if believed, demonstrated that the mere presence of asbestos in building materials is not health-threatening. The court expressly found that the "likely explanation for the verdict is that defendants by their evidence made an overwhelming showing that the risk involved to occupants of buildings containing asbestos is ... miniscule...." The majority disregards that significant finding without explanation.

It is true that "merely superimposing correct instructions" does not in itself cure a defective instruction. However, when a subsequent instruction which correctly states the law is considered in conjunction with a judicial determination that the erroneous statement dealt only with a minor claim and that the verdict was otherwise supported by a factual theory unaffected by the error, the cumulative effect inescapably suggests harmless error.

On the available record, a lengthy new trial is simply not warranted by the nature of the error. I, therefore, respectfully dissent.

---

4. The school district asserts that it suffered prejudice by the introduction of a report of a fiber release test that United States Gypsum withheld from discovery. *See* Fed.R.Civ.P. 26(e). The school district has now received a copy of the test in ample time to prepare for the new trial. The school district can also now ensure that its experts are available and that relevant air tests are introduced in its case-in-chief so that a proper foundation is laid for cross-examination of

the companies' witness. The school district's motion to supplement the record is denied.

1. The district court noted that the warranty claim appeared to have been raised primarily as a means of confronting a defense by the asbestos companies predicated upon contributory negligence. No such defense was, in fact, ever offered.