842 F.2d 1292
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SPARTANBURG COUNTY SCHOOL DISTRICT SEVEN, Plaintiff-Appellee,
v.
UNITED STATES GYPSUM COMPANY, Defendant-Appellant,
and
National Gypsum Company, Defendant.
 No. 87-2648.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 3, 1988.
Decided March 25, 1988.
 
 Thomas B. Kenworthy (Morgan, Lewis & Bockius; Edwin P. Martin; Steven W. Ouzts; Turner, Padget, Graham & Laney, P.C., on brief), for appellant.
 Edward James Westbrook (Motley, Loadholt, Richardson & Poole; Daniel A. Speights; Speights & Runyan, on brief), for appellee.
 Before K.K. HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 United States Gypsum (USG) appeals from an adverse judgment entered upon a jury verdict in this asbestos-removal litigation. United States Gypsum contends that the district court erred in denying its motion for judgment notwithstanding the verdict and its alternative motion for a new trial. We find no cause for reversal and affirm the district court's judgment.
 
 
 2
 * In late 1982, Spartanburg County School District Seven (Spartanburg) removed asbestos-containing acoustical plaster from the ceilings of several of its school buildings. In July 1983, Spartanburg filed suit against USG and National Gypsum Company to recover the costs of removing and replacing the ceilings. After trial, the district court submitted the case to the jury on the issues of negligence and breach of implied warranty. The jury returned a verdict for the defendants, and the district court entered judgment on the verdict. On appeal, this court vacated the judgment and remanded for retrial on the implied warranty claim because of error in the jury instructions. Spartanburg Co. School District Seven v. National Gypsum Co., 805 F.2d 1148 (4th Cir.1986). Spartanburg and National Gypsum settled their dispute prior to retrial.
 
 
 3
 On retrial the district court did not permit USG to invoke the statute of limitations as a defense, noting that USG had abandoned that defense at the first trial. United States Gypsum offered no evidence but moved for a directed verdict on the grounds that (a) Spartanburg did not prove a sale of the plaster giving rise to an implied warranty, (b) Spartanburg did not prove that the plaster was defective, and (c) Spartanburg did not give sufficient notice of breach. The court denied the motion and submitted the case to the jury, which returned a verdict for Spartanburg in the amount of $106,107. United States Gypsum moved for judgment notwithstanding the verdict or, in the alternative, for a new trial at which it could raise the statute of limitations as a defense. The court denied these motions and entered judgment on the jury verdict.
 
 II
 
 4
 United States Gypsum contends that the district court erred in denying its motion for judgment notwithstanding the verdict. United States Gypsum first argues that on this record no jury reasonably could have concluded that Spartanburg provided adequate and timely notice of breach.
 
 
 5
 This retrial involves two school buildings--the Pine Street Elementary School, built in 1955 using Sabanite acoustical plaster, and the Madden Elementary School, built in 1958 using Audicote acoustical plaster. In the 1970s, Spartanburg became concerned about the threat posed by asbestos in these and other school buildings. On December 20, 1979, Spartanburg's architect contacted USG by letter, stated that another Spartanburg school building (the Administration Building) contained Audicote, and inquired whether Audicote contained any asbestos fibers. United States Gypsum responded as follows:
 
 
 6
 AUDICOTE Acoustical Plaster contains only a minor amount of asbestos (approximately 7%), which is added to provide body to the wet mortar, thereby reducing the tendency of the mortar to flow and sag when applied to the ceiling. The small amount of asbestos fibers is securely embedded in the mortar matrix and should not be released to the air unless it is forcefully pulverized or abraded.
 
 
 7
 I am not aware of, nor can I conceive of, a hazardous exposure resulting from a properly installed and maintained AUDICOTE Acoustical Plaster ceiling.
 
 
 8
 Notwithstanding USG's reassurances, Spartanburg removed the plaster from the ceilings of these two schools in 1982 based on the recommendation of the South Carolina Department of Health and Environmental Control. On July 23, 1983, Spartanburg sent a letter demanding that USG abate the hazard posed by the asbestos, though the asbestos in fact had been removed. Spartanburg filed this lawsuit three days later.
 
 
 9
 Under South Carolina law, the adequacy of notice is a jury question. Simmons v. Ciba-Geigy Corp., 279 S.C. 26, 28, 302 S.E.2d 17, 18 (1983). The court's instructions to the jury placed on Spartanburg the burden of demonstrating either that it provided the required notice of breach or that it was excused from doing so because any notice would have been futile. Our inquiry is simply whether the evidence would permit a rational jury to find in favor of Spartanburg on these issues. Miller v. Premier Corp., 608 F.2d 973, 981 (4th Cir.1979). The jury could have inferred that Spartanburg's 1979 letter did inform USG of Spartanburg's concern over the presence of asbestos in its schools. This inference is rational since USG's reply went to great lengths to state that under no circumstances could its product pose a health hazard simply because it contained asbestos. A rational jury could have found either that this correspondence provided USG with notice that Spartanburg was troubled by the presence of asbestos in its schools, or that subsequent notice would have been futile given USG's adamant statement that its product was not defective.
 
 III
 
 10
 United States Gypsum also contends that Spartanburg failed to prove a sale by USG or the payment of a full and fair price. Accordingly, USG argues that Spartanburg never proved the existence of any implied warranty and that the district court therefore should have granted judgment notwithstanding the verdict.
 
 
 11
 This argument is without merit. Given the presence of USG's plaster in the schools, and the lack of any evidence that USG donated the plaster, a rational jury would be justified in concluding that a sale and payment had occurred. The district court properly denied USG's motion for judgment notwithstanding the verdict.
 
 IV
 
 12
 United States Gypsum also contends that the district court erred in denying its alternative motion for a new trial. United States Gypsum first argues that the court should not have precluded USG from raising the statute of limitations as a defense in the retrial.
 
 
 13
 At the first trial of this action, USG withdrew its statute of limitations and contributory negligence defenses. Spartanburg withdrew its claims for restitution and fraud--which were not subject to a statute of limitations defense--as well as its claim for conspiracy. The case went to the jury only on the issues of negligence and breach of implied warranty. After remanding for retrial, this court ordered that the retrial be limited to the implied warranty claim, thereby precluding Spartanburg from resurrecting its fraud, restitution, and conspiracy claims.
 
 
 14
 At the retrial, the district court precluded USG from raising a statute of limitations defense. The district court found that Spartanburg had withdrawn its fraud, restitution, and conspiracy claims in reliance upon USG's withdrawal of its contributory negligence and statute of limitations defenses. The court therefore held that USG could not raise these defenses on retrial under the doctrines of equitable estoppel (which prevents a party from changing its litigation position after another party has relied on that position to its prejudice) and judicial estoppel (which precludes a party from invoking a position inconsistent with that taken earlier in the litigation in order to protect the integrity of the courts and the judicial process). See Tenneco Chemicals, Inc. v. William T. Burnett & Co., 691 F.2d 658, 664-65 (4th Cir.1982); Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1177-79 (D.S.C.1974). We must accept the district court's finding that there was a "tradeoff" of claims and defenses unless that finding is clearly erroneous.
 
 
 15
 At the first trial, Spartanburg's attorney stated in open court that a contemporaneous withdrawal of claims and defenses had occurred in the charge conference:
 
 
 16
 Your Honor, in addition, on the charges I wanted to note for the record that we withdrew charges 9, 10, and 32 to 41, when we withdrew our fraud and restitution and conspiracy counts, and defendants withdrew their contributory negligence and statute of limitations defense and that occurred in chambers.
 
 
 17
 United States Gypsum did not object to this statement. It argues, however, that Spartanburg actually withdrew its fraud and restitution claims in open court the day before the charge conference and that the district court's "tradeoff" finding is therefore clearly erroneous.
 
 
 18
 On the day before the charge conference, the following colloquy took place between the court and Spartanburg's attorney:
 
 
 19
 THE COURT: Let me ask the plaintiff this. Same thing I been asking you about fraud and that kind of thing. What can you prove by way of restitution, could you win this case on restitution and lose it on all these other claims?
 
 
 20
 [PLAINTIFF'S ATTORNEY]: Could I have 30 seconds?
 
 
 21
 THE COURT: If necessary, you better take 30.
 
 
 22
 [PLAINTIFF'S ATTORNEY]: Your Honor, [at] this time, although we think there are some differences between restitution and negligence counts, if we have negligence and warranty counts to the jury, we will not insist on proceeding on restitution count at this time.
 
 
 23
 This colloquy does not necessarily demonstrate that Spartanburg had independently and finally abandoned its restitution claim. One rationally could infer from this statement that Spartanburg agreed to withdraw its restitution claim (which was not subject to a statute of limitations defense) if its negligence and warranty claims (which were subject to a statute of limitations defense) were submitted to the jury. Given this inference and the lack of any evidence that Spartanburg ever abandoned its conspiracy claim prior to the charge conference, we cannot say that the district court clearly erred in finding that Spartanburg withdrew its claims in reliance on USG's withdrawal of its defenses. See Fed.R.Civ.P. 52(a). Because this factual finding is unassailable, the court correctly held that USG was estopped from raising the statute of limitations and properly denied USG's alternative motion for a new trial.
 
 
 24
 United States Gypsum also contends that the district court committed a series of evidentiary errors that warrant a new trial. We find no cause for reversal in any of these assignments of error. We deny Spartanburg's motion to strike parts of USG's appendix and brief.
 
 
 25
 AFFIRMED.
 
 K.K. HALL, Circuit Judge, concurring:
 
 26
 In the particular context in which this case reaches us on appeal, I have no choice but to concur in the result reached in the majority opinion. I continue to question whether the mere presence of asbestos in building material has been shown to be a defect that would justify the sort of precipitate removal action undertaken by the plaintiff school board. Unfortunately, United States Gypsum failed to contest the merits of the instant dispute in a fashion that would allow meaningful appellate review of this central issue.
 
 
 27
 I dissented from the remand ordered in Spartanburg County School District Seven v. National Gypsum Co., 805 F.2d 1148 (4th Cir.1986). ("Spartanburg I"). I was satisfied that the jury instruction regarding breach of warranty then at issue, although incorrect, was harmless error because the evidence provided by the defendant had overwhelmingly demonstrated that its ceiling tile was not defective. The recognized hazards attendant to asbestos are those arising from exposure to airborne fibers. Even at this late juncture, I have seen no persuasive evidence that such health threatening fibers are present outside the areas where asbestos products are initially processed. Moreover, I am aware of no case in which simple passive exposure to a finished product containing asbestos has resulted in injury or disease. Indeed, plaintiff's removal efforts which disturbed the asbestos almost certainly produced, at least temporarily, a more hazardous situation than previously existed in the Spartanburg schools.
 
 
 28
 I regret that, on remand from Spartanburg I, United States Gypsum appears to have been unwilling to rely upon a lack of defect defense. Instead, appellant elected to try the remanded case solely on the collateral issues of lack of notice, lack of sale, and statute of limitations. This was a questionable tactical gamble and it has failed. The district court's disposition of those specific issues is, as the majority properly concludes, without reversible error.
 
 
 29
 The societal concern with the presence of asbestos in public buildings threatens to reach hysterical proportions. I fear that our decision today will do more to stir passions than to encourage reason. Nevertheless, as an appellate court we must decide only the issues that the parties properly bring before us. I can only hope that in the inevitable next case over the use of asbestos products, all parties involved will contribute to a fuller and more rational examination of the merits of the dispute than occurred in this appeal.