894 F.2d 401
 15 Fed.R.Serv.3d 894
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Glen R. GIBSON, 107 Locust Street Henderson WV 25106;
Maxine Gibson, 107 Locust Street Henderson WV
25106, Plaintiffs-Appellants,
v.
GILL-LEE TOWING, INC., Post Office Box 25 Point Pleasant, WV
25550; Ingram Barge Company, Post Office Box 23049 4304
Harding Road Nashville, TN 37202; The M/V IRON TRAVELER,
(In Rem), Defendants-Appellees,
and
The United States of America Department of the Army, Corps
of Engineers, Defendant.
 
 No. 88-2208.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 31, 1989.
Decided: Jan. 5, 1990.
 Meredith Lynn Lawrence (Steven C. Schletker, Lawrence & Schletker, P.S.C., on brief), for appellants.
 William Paul Schroeder (Rendigs, Fry, Kiely & Dennis; Linda K. Dickert, Associate Litigation Counsel, INGRAM INDUSTRIES, INC., on brief), for appellees.
 Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and JOSEPH H. YOUNG, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 A seaman brought this action for damages against his employer, his vessel, and the vessel's owner pursuant to the Jones Act, 46 U.S.C. Sec. 688, for personal injuries suffered in the course of his employment. More specifically, the seaman accidentally fell onto the vessel from a ladder that was attached to a canal lock through which the vessel was passing. Following a trial by jury on the issues of liability and damages, a verdict was returned against the plaintiffs on all counts, and judgment was entered by the district court in favor of the defendants. This appeal followed. Because no reversible errors were made by the trial court, the decision below is affirmed.
 
 I.
 
 2
 Glen R. Gibson ("Gibson"), the plaintiff, was an experienced seaman employed by Gill-Lee Towing, Inc. ("Gill-Lee"). At the time of his accident, Gibson was working as a deck engineer aboard the tow boat M/V IRON TRAVELER (the "Iron Traveler"), which is owned by Ingram Barge Company ("Ingram"). Gill-Lee, the Iron Traveler and Ingram are the defendants in this case. On December 17, 1985, the Iron Traveler was pulling coal barges up the Ohio River toward Pittsburgh, and was approaching the Montgomery Locks and Dam near Mile 32 (the "Locks"). Gibson had just completed a six-hour work shift as the Iron Traveler entered the Locks, and he was leaving the ship in search of a telephone when the accident occurred. Gibson sustained serious injuries to his back and wrists while attempting to climb a ladder that was attached to and was part of the Locks. Due to the accumulation of grease, oil and coal dust on his boots, and the build-up of snow, ice and algae on the rungs of the ladder, Gibson lost his footing and fell 12 to 15 feet onto the Iron Traveler.
 
 
 3
 On May 15, 1987, Gibson filed this action in the Southern District of West Virginia against the appellees and also the United States Army Corps of Engineers, the builder and operator of the Locks. Gibson's claim against the government was settled prior to trial, and the settlement was approved by Order of the district court dated June 16, 1988. Gibson's remaining claims against Gill-Lee, the Iron Traveler and Ingram were heard by a jury, which decided all questions in the defendants' favor. Gibson now appeals that decision on assignment of numerous errors.
 
 II.
 
 4
 First, Gibson asserts that the district court erred in failing to instruct the jury on an employer's duty to warn a seaman of a danger known to the employer. The district court did not err in refusing to give this instruction because the request for the instruction was untimely, and the instruction itself was unnecessary. Gibson failed to request the instruction: (1) in his proposed jury instructions which he submitted to the district court prior to the final pre-trial conference; (2) in his supplemental proposed jury instructions which he also filed with the court; (3) during the four days of trial; (4) before or during the 90-minute conference on jury instructions held in the trial judge's chambers on the day prior to the conclusion of the trial; (5) after counsel were provided with a written text of the court's proposed jury instructions immediately after the conference; (6) before final arguments were delivered to the jury; or (7) before the jury instructions were read by the court. Indeed, Gibson did not object to the absence of a duty to warn instruction until after the jury had been charged and was about to begin its deliberations. Although Gibson raised his objection in time to preserve this question for appeal, see Fed.R.Civ.P. 51, his delay in requesting the instruction is unjustified and now precludes him from prevailing on the issue.
 
 
 5
 In Ivy v. Security Barge Lines, Inc., 585 F.2d 732 (5th Cir.1978), aff'd in part and rev'd on other grounds, 606 F.2d 524 (5th Cir.1979) (en banc), cert. denied, 446 U.S. 956, reh'g denied, 448 U.S. 912 (1980), the Fifth Circuit was faced with the same issue of delay now confronting this court. In that case, as in this one, trial counsel waited until after the closing arguments were made to the jury and after the judge had instructed them in substantial accordance with counsel's prior requests. Only when the trial judge afforded counsel an opportunity to object to his jury charge, as required under Rule 51, did the lawyer initially ask that a special charge be given to the jury. In holding that the trial judge was not obligated to grant the instruction, the court stated:
 
 
 6
 While the trial court does have a duty to honor counsel's requests for special charges timely made, even in instances where only the substance of the issue is made known, there is an obligation on lawyers, too, who know far better than the court the issues in the case and its hidden complexities, to plan ahead, to give the judge at least some opportunity to reflect on requests and to accord to opposing counsel an opportunity to respond.
 
 
 7
 In this case it was evident long before trial began [what plaintiff's theory of the case was]. Instead of anticipating the necessity for jury guidance on the question, defense counsel [the party requesting the belated instruction] waited until the charge had been completed and the jury was standing by, ready to begin deliberation. Where, as here, a charge was requested orally only after the jury had been instructed, and even then only the subject not the content of the charge was suggested, it was not error for the trial judge to refuse to deliver it.
 
 
 8
 Id. at 739-40 (citations omitted). The reasoning of the Ivy court is equally applicable to the present case. Gibson had ample opportunity to offer the desired instruction at every stage of the litigation, and he was prevented from having it read to the jury only through his own omission.
 
 
 9
 Moreover, a specific duty to warn instruction is unnecessary in this case. In reviewing the adequacy of a jury charge, "[t]his court must look to the entire charge and affirm the trial court if the instructions, taken as a whole, fairly and adequately state the pertinent legal principles involved." Spartanburg County School District Seven v. National Gypsum Co., 805 F.2d 1148, 1150 (4th Cir.1986); Hoggs Oyster Co., Inc. v. United States, 676 F.2d 1015, 1019 (4th Cir.1982). The following component of Judge Haden's jury charge in this case fairly and adequately states the defendants' responsibility to the plaintiff:
 
 
 10
 Now, for purposes of the Jones Act, as counsel on both sides have stated to you, negligence is said to be a cause or a proximate cause of damage if it plays any part, no matter how slight, in bringing about the actual damage. So if you find from the evidence in this case that any negligence on the part of the defendants contributed in any way toward any damages or injury suffered by the plaintiff, then you may find that such injury or damage was caused by the defendant's act or omission. In other words negligence.
 
 
 11
 The charge given to the jury sufficiently encompassed the plaintiff's theory in this case that the defendants owed a duty to warn Gibson of a danger of which they were aware. As this court has stated previously, "[a]lthough a more precisely delineated charge could have been given, on the whole it fairly and adequately instructed the jury on factual contentions, which though conflicting, were relatively simple to understand." Cicinato v. McPheeters, 542 F.2d 634, 636 (4th Cir.1976).
 
 III.
 
 12
 Next, Gibson argues that a new trial is warranted by the inclusion into the record of earlier excluded testimony. A new trial is not warranted because the earlier excluded testimony was introduced solely as a result of the plaintiff's own lack of care in presenting his case-in-chief. In this case, Judge Haden granted the plaintiff's motion in limine to exclude as irrelevant and prejudicial any evidence of Gibson's alcoholism. During the plaintiff's case-in-chief, Gibson's lawyers played a videotaped deposition of Gibson's treating physician. The physician apparently discussed or referred to Gibson's alcoholism during a portion of the tape which Gibson's lawyers presented to the jury. Immediately after this inadvertent disclosure was made, the plaintiff's counsel objected to their own evidence, moved to strike the tainted testimony from the record, requested that the judge admonish the jury to ignore any reference to the alcoholism, and asked the judge's permission to edit the tape and replay it for the jury without the references to Gibson's alcoholism. All of these requests were granted by the court. Moreover, the defendants did nothing to transgress Judge Haden's order excluding all evidence regarding Gibson's past alcoholism. These events do not rise to the level of actionable error, and did not result in any demonstrable prejudice to the plaintiff.
 
 IV.
 
 13
 Gibson also maintains that a new trial is warranted by the appellees' allegedly improper pre-trial contact with one of the appellant's rebuttal witnesses. A new trial is not justified because the witness provided testimony favorable to the appellant, the testimony was consistent with the witness's prior deposition, and there is no basis for a finding of undue influence.
 
 V.
 
 14
 Finally, Gibson claims that the trial court erred in denying his motion for a directed verdict on the issue of the wrongful termination of the appellant's post-accident medical benefits, also referred to as "maintenance and cure." This issue was largely one of fact and not of law. See Joyce v. Atlantic Richfield Co., 651 F.2d 676, 685 (10th Cir.1981); Caulfield v. AC & D Marine, Inc., 633 F.2d 1129, 1132 (5th Cir.1981). The denial of a motion for a directed verdict is reviewed de novo. Thus, "in determining whether the verdict in this case should have been directed, we must apply the same standard [that was or should have been] employed by the district court in passing on the original motion." Tights, Inc. v. ACME-McCrary Corp., 541 F.2d 1047, 1055 (4th Cir.), cert. denied, 429 U.S. 980 (1976). The appropriate test for a directed verdict, at either the trial or the appellate level, is "whether there was sufficient evidence to support a verdict for the party opposing the motion." Id.; see also Lust v. Clark Equipment Co., Inc., 792 F.2d 436, 437-38 (4th Cir.1986). In the present case, there was ample evidence in the record to support a jury verdict in the defendants' favor.
 
 VI.
 
 15
 Our examination of the record reveals that no reversible errors were committed by the district court. All things considered, the judgment below is
 
 
 16
 AFFIRMED.